Herzog Miniature Lamp Works, Inc. v. Commissioner.
Herzog Miniature Lamp Works, Inc. v. Commissioner
Docket No. 3089-70.
United States Tax Court
T.C. Memo 1972-173; 1972 Tax Ct. Memo LEXIS 84; 31 T.C.M. (CCH) 847; T.C.M. (RIA) 72173; August 15, 1972. Filed. Tried in New York, New York. *84 Held: Petitioner's earnings were permitted to accumulate beyond the reasonable needs of its business in the taxable years 1966 and 1967. Accordingly, petitioner was subject to the surtax on such earnings under sec. 531, I.R.C. 1954. Jerome Kamerman, 500 5th Ave., New York, N. Y., for the petitioner. Michael A. Menillo, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: The respondent determined that there were deficiencies in income taxes due from the petitioner in the amount of $8,612.23 for the taxable year 1966 and in the amount of $12,701.27 for the taxable year 1967. The *86 sole question involved in the determination of these deficiencies is whether the petitioner is liable for surtax pursuant to section 531, [1] as having been availed of for the taxable years 1966 and 1967 for the purpose of avoiding the income tax with respect to its sole shareholder by permitting its earnings and profits to accumulate instead of being divided or distributed. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioner, Herzog Miniature Lamp Works, Inc., is a New York corporation having its place of business in Long Island City, New York. Petitioner filed corporate income tax returns (Forms 1120) for the taxable years 1966 and 1967 with the district director of internal revenue at New York, New York. As of the date the petition herein was filed, the address of petitioner was 50-17 Fifth Street, Long Island City, New York. Charles Perrenod was, during the taxable years 1966 and 1967, and continues to be, the sole stockholder and president *87 of petitioner. He had first been employed by petitioner some 42 years previously when he was only 12 years of age. In 1936, Mr. Perrenod acquired an interest in petitioner, and in 1948, he acquired the remaining stock. From its inception, the business of petitioner has consisted of the manufacture of miniature incandescent lamps. During the taxable years involved, the petitioner's customers included Otis 848 Elevator Co., Western Electric, NASA, and Westinghouse Electric Corp. In the manufacture of the miniature incandescent lamps, the first lamps, the first step consisted of the placing of two or more fine wires onto a glass bead and winding a filament on the wires. The mounted wires are then inserted into a glass tube or globe to which the bead is sealed. The air in the tube is evacuated and the end of the tube cut off. A metal base may be affixed to some models, completing the lamp. While these operations were carried out by the petitioner solely through the use of hand labor, automatic machinery was available to do the same work. Bader Machinery Company Limited of England, under the trade name "Badalex," was a supplier of such equipment. The lamps manufactured by the *88 petitioner primarily were for specialized purposes and the specifications and quantities required production facilities. This type of production necessitated the use of hand labor and resulted in a considerably higher production cost than the miniature lamps which were being produced in tremendous volume on automated production lines. The unit cost of the lamps manufactured by hand was about 20 cents. A comparable lamp could be manufactured by automatic machine for 4.2 cents or less providing there was sufficient volume to warrant the tooling and setup time for the machine. The principal manufacturers of mass-produced miniature lamps included General Electric and Westinghouse, both of whom were also either customers or potential customers of the petitioner for "short-run" specialty lamps. On or about February 23, 1962, petitioner received an order from Westinghouse Electric Corp. for the manufacture of 1,600,000 aircraft instrument lamps of petitioner's design. Said order specified deliveries of 100,000 per month for the first 6 months and 150,000 per month thereafter. Between May 14, 1962 and October 7, 1963, petitioner delivered 1,309,000 lamps pursuant to said order. The balance *89 of the order was then cancelled. As a result of petitioner's experience in connection with the Westinghouse order, Perrenod began to consider the acquisition of automatic machinery in order to be in a position to produce miniature lamps in larger volume. After consulting with production experts, he visited the Badalex factory in 1965. During that visit, he familiarized himself with the Badalex automatic lamp-making equipment. This consisted of four machines which had the capacity to produce completed miniature incandescent lamps from raw material parts without the use of hand labor. The first stage of mounting wires on the glass bead and winding on the filament was done on a "bead mount mill." The remaining three stages consisted of a second bead mount machine, a sealing and exhaust machine, and a machine to fix the caps on the base. The entire line was capable of producing lamps at the rate of about 2,000 per hour. By hand, one worker could turn out about 25 mounted filaments per hour. Petitioner employed about 100 workers. By letter dated October 15, 1965, Bader Machinery Company Limited quoted to the petitioner a price of 9,500 English pounds sterling for a 20 head automatic *90 bead mount mill machine and a price of 260 English pounds sterling for the addition of a filament drum feed described as follows: Filament Drum Feed (extra, as substitute for automatic filament winding unit when required for special filaments) The petitioner thereupon placed an order with Bader Machinery Company Limited pursuant to the letter quotation. The machine was delivered to the petitioner in the fall of 1966 at a total cost, including installation, of approximately $25,000. Thereafter, the petitioner operated the machine intermittently for a few months but found that the time required to set up the machine for a special filament did not result in sufficient savings for the quantities required by the petitioner. The machine remains in petitioner's plant but has not been used by the petitioner since that time. For the taxable years 1965 to 1967, inclusive, petitioner's gross sales (before returns and allowances) were, as follows: Year
Gross Sales
1965
$392,692
1966
399,654
1967
450,410
As stipulated by the parties, petitioner's balance sheets for the taxable years as of December 31, 1965 to 1967, inclusive, were, as follows: 849 Assets
12/31/65
12/31/66
12/31/67
Cash
$140,720.00
$ 70,374.00
$195,019.00
Escrow
85,000.00
Loans to stockholder
36,999.00
4,188.00
24,188.00
Accounts receivable
5,339.00
12,823.00
15,786.00
Inventory
15,900.00
16,600.00
12,100.00
Fixed assets
34,342.00
34,792.00
29,261.00
Deposit
6,000.00
6,000.00
6,000.00
Investment - Fisk Factors Corp
30,000.00
30,000.00
30,000.00
Loans rec. - Fisk Factors Corp 95,000.00
95,000.00
95,000.00
Total $364,300.00
$354,777.00
$407,354.00
Liabilities & Capital
12/31/65
12/31/66
12/31/67
Accounts payable
$ 45,000.00
$ 964.00
$ 854.00
Other current liabilities
4,507.00
4,639.00
8,912.00
Capital stock
200,000.00
200,000.00
200,000.00
Retained earnings 114,793.00
149,174.00
197,588.00 $364,300.00
$354,777.00
$407,354.00
*91 The fixed assets carried on the balance sheet of December 31, 1965, at a cost of $34,342 included the Badalex bead mount machine which had recently been acquired at a cost of approximately $25,000. The building in which operations were carried on was owned by Charles Perrenod and leased to the petitioner at an annual rental of $20,000. Fisk Factors Corp. was a factoring company, the stock of which was owned onehalf by the petitioner and one-half by the petitioner's accountant. The corporation had been engaged in making short-term loans. At this time, however, the sole borrower was having financial difficulties and ultimately become bankrupt. The sum of $125,000 loaned to or invested in Fisk Factors Corp. could not be realized by the petitioner. On its income tax returns for 1966 and 1967, petitioner reported, as salary paid to Charles Perrenod, the sum of $35,600 and the sum of $16,160, respectively. In addition, during the taxable year 1967, petitioner credited a dividend to the account of Charles Perrenod in the amount of $10,000. The loans to stockholders shown on petitioner's balance sheets represented amounts advanced to Charles Perrenod from time to time as needed by him *92 for his personal use. On its income tax returns for 1966 and 1967, petitioner reported net income subject to tax in the amounts of $41,694.22 and $91,168.37, respectively. After adjustments proposed by the respondent and not in dispute, petitioner's taxable income for these years amounted to $44,483.63 and $93,357.78, respectively, on account of which there was due income taxes (other than the surtax under section 531) in the amounts of $14,852.04 and $38,311.56, respectively. In accordance with section 534, by letter dated December 10, 1969, duly addressed to the petitioner, the respondent duly notified the petitioner of an intent to propose a deficiency for the taxable years 1966 and 1967 with respect to the accumulated earnings tax imposed by section 531. In reply thereto, by letter dated December 21, 1969, petitioner submitted a statement pursuant to section 534(c), as follows: Please be advised that with reference to your audit of the Herzog Miniature Lamp Works, Inc. for the years 1966 and 1967, we hereby protest the findings of your office for additional tax due. It has been the plan of this corporation to accumulate sufficient funds for a major overhauling and expansion *93 of the premises. The equipment of this corporation is all but fully depreciated and no piecemeal process of replacement will suffice to enable this corporation to compete successfully with its competitors [sic]. We therefore have had to make preparations in the form of accumulation of funds of a considerable sum of money to pursue our plans. Opinion Section 531 imposes a tax on the "accumulated taxable income" as defined in section 535 of a corporation which has been formed or availed of for the purpose of avoiding the income tax with respect to its shareholders by permitting earnings and profits to accumulate instead of being divided or distributed within the meaning of section 532. The parties are in agreement with respect to the accumulated taxable income of the petitioner. The sole question for decision is whether such income was 850 permitted to accumulate for the purpose of avoiding the income tax which would be due from Charles Perrenod if distributed as a dividend. In the determination of this question, certain evidentiary rules are set forth in sections 533 and 534. Section 533(a) provides, as follows: (a) Unreasonable Accumulation Determinative of Purpose. - *94 For purposes of section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary. Section 534 provides that in any proceeding before this Court, the burden of proof shall be upon the respondent either (1) if the respondent fails to send prior notification to the taxpayer in accordance with section 534(a)(1) or (2) if upon receipt of such notice the taxpayer submits a statement setting forth the grounds upon which the taxpayer relies, in accordance with section 534(c). Section 534(c) further provides, as follows: (c) Statement by Taxpayer. - Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescibe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted *95 to accumulate beyond the reasonable needs of the business. The respondent disputes the adequacy of the statement submitted by the petitioner in this case. Section 1.534-2(a)(2) of the regulations reiterates the requirement contained in section 534(c) that the statement submitted by the taxpayer set "forth the ground or grounds * * * on which it relies to establish that all or any part of its earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business." However, a statement that is "so broad in scope and so nebulous in its nature as to fail to constitute a statement of a ground" justifying the accumulation is not sufficient to lodge the burden of proof upon the respondent. I. A. Dress Co., 32 T.C. 93, 100 (1959), affd. 273 F. 2d 543 (C.A. 2, 1960), certiorari denied 362 U.S. 976 (1960). Section 1.534-2(b)(2) of the regulations further provides that the burden of proof is on the taxpayer where "the statement does not contain facts sufficient to show the basis" of the grounds for non-imposition of the tax. The statement by the petitioner is both broad and general in scope and fails to set forth *96 any specific facts which would justify further retention of its earnings. As such, it fails to meet the requirements of section 534(c). Cf. Chatham Corp., 48 T.C. 145 (1967). Therefore, the burden to prove that the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business rests on the petitioner. The evidence offered by the petitioner not only fails to sustain that burden, but tends to prove the opposite. The undisputed facts show that the petitioner for many years had been in the business of manufacturing miniature incandescent lamps of high quality for special purposes. These lamps were manufactured by hand at a cost which was several times in excess of the selling price of similar lamps produced for the mass market on automated equipment. One of the petitioner's largest customers was Westinghouse Electric Co., itself a manufacturer of mass-produced miniature lamps. Westinghouse went to the petitioner when volume did not justify producing the lamp on its production lines. After producing 1,309,000 lamps of a particular model pursuant to an order from Westinghouse for 1,600,000 units, the order was cancelled. Unquestionably, *97 this was an unusually large order for the petitioner. While petitioner was led to believe that the reason for the cancellation was petitioner's inability to deliver the required quantities, it appeared from the notations on the order that immediately preceding the cancellation petitioner had been delivering the monthly quantities specified in the order. Regardless, however, of the real reason for Westinghouse's action, Charles Perrenod was led thereby to consider the acquisition of equipment for the production of miniature lamps in larger quantities than the petitioner was then capable of producing. As a first step, Charles Perrenod went to England to examine automatic lamp-making machines offered by Badar Machinery Company Limited. This visit culminated in the acquisition by petitioner of a bead mount 851 machine to produce the filament, which was the first and most time-consuming step in the petitioner's manufacturing process. The petitioner contends that the acquisition of this machine was the forerunner to the acquisition of the complete Badalex line which would enable the petitioner to go into the mass market for miniature lamps. Retention of earnings, the petitioner argues, *98 is justified as being required in order to complete the transition from a job shop to the mass production of miniature incandescent lamps. Although we do not doubt that Charles Perrenod may have entertained the ambition from time to time to go into the mass production of these lamps, the record fails to show that he ever went so far as to adopt or even seriously to consider such a plan. Section 1.537-1(b), Income Tax Regs. See also American Metal Products Corporation v. Commissioner, 287 F. 2d 860 (C.A. 8, 1961); Faber Cement Block Co., 50 T.C. 317 (1968). By doing so, the petitioner would have been going into competition with some of its principal customers. We doubt that Perrenod ever considered such a course. The bead mount machine acquired by the petitioner in 1966 does not indicate any intent on the part of the petitioner to go into the mass market. Certainly, it could have been utilized for that purpose if the petitioner had acquired the remaining equipment which would be needed to set up an automated production line. There is, however, no evidence that the petitioner ever seriously intended to acquire such equipment. On the contrary, the bead mount *99 machine was acquired with a filament drum feed to be used in producing special filaments, thus enabling the petitioner to utilize the machine as the first step in what was otherwise a hand-made lamp. Undoubtedly, if the petitioner had received other orders of the magnitude of the Westinghouse order, which led to the purchase of the bead mount machine, the petitioner would be in a better position to meet its delivery schedules at a lower cost. The fact that the bead mount machine has not been used since it was acquired would seem to indicate that such orders were not forthcoming. If we do not find that there was an accumulation of earnings for the purpose of enabling the petitioner to go into the mass production of miniature incandescent lamps, we must find for the respondent. The liquidity shown on the petitioner's balance sheet would negative any need otherwise to accumulate its earnings. The petitioner's accounts receivable at all times exceeded its current liabilities. Even disregarding the $125,000 investment in Fisk Factors Corp., the petitioner had a cash surplus equal to more than ten times its inventory and no other liabilities. These facts show clearly that the accumulated *100 earnings and profits of the petitioner were far in excess of the reasonable needs of its business. In accordance with section 533(a), the petitioner must be deemed to have been availed of for the purpose of avoiding the income tax with respect to its sole shareholder. Decision will entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩