*Decisions will be entered for the petitioners.*

## I. A. DRESS CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63271. Filed April 13, 1959.

*Michael Kaminsky, Esq.*, and *Leo Kotler, Esq.*, for the petitioner.
*A. Jesse Duke, Jr., Esq.*, for the respondent.

WITHEY, *Judge:* Respondent determined a deficiency in petitioner's income tax for 1949 in the amount of $6,609.78.

The issue presented for our decision is the correctness of the respondent's action in determining that petitioner was availed of during 1949 for the purpose of avoiding the imposition of surtax upon its shareholder within the meaning of section 102 of the Internal Revenue Code of 1939.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly. Petitioner is a corporation organized on October 18, 1924, under the

laws of the State of New York and at all times here material has been engaged exclusively in the business of operating under lease a commercial building located at 115–125 West 30th Street, New York, New York.

Petitioner filed its income tax return for 1949 with the director of internal revenue for the Upper Manhattan district of New York on February 17, 1950. The return was prepared on an accrual method of accounting and disclosed a net income for 1949 in the amount of $37,719.48 and an income tax liability of $12,491.33. The balance of petitioner's income after payment of income taxes, or $25,228.15, was retained.

An examination by respondent of petitioner's 1949 income tax return resulted in certain adjustments including an increase in net income to $41,332.91 and an increase in normal tax and surtax liability to $14,406.44. The petitioner executed a partial waiver of restrictions on assessment, Form 870, agreeing to those adjustments. The balance of its net income after payment of taxes is $26,926.47, 27½ per cent of which is $7,404.78.

Petitioner's paid-in capital consisted of 50 shares of $100-par-value common stock which at all times pertinent hereto was owned by its president and sole stockholder, Isaac Alper.

The business operations of the petitioner commenced with the leasing of a portion of a loft building located at 115–125 West 30th Street, New York, New York. Subsequently, on October 1, 1927, the corporation became the lessee of the entire building. This lease was extended several times and was canceled on October 1, 1946. The cancellation of the lease on that date was part of an agreement between petitioner and the estate of James Gridley, Inc., the owner of the fee, whereby it (petitioner) executed a lease under which it continued as the lessee of the premises located at 115–125 West 30th Street, New York City. The term of the lease ran until January 31, 1954. On July 1, 1948, it entered into an agreement with the estate of James Gridley, Inc., extending the term of the lease to January 31, 1964. On July 1, 1950, the parties again agreed to a further extension of the term of the lease to January 31, 1967.

Under the lease of the premises of the above-described property, petitioner sublet the building space, collected rents and furnished all of the services required of a landlord.

The petitioner's income tax return for 1949 discloses gross rentals in the amount of $179,775.22 and other income of $3,053.88, including interest on United States Government obligations in the amount of $1,652.76. The return reflected expenses in the amount of $145,109.62, including rental expenses of $63,987.34.

The petitioner's balance sheets as of December 31, 1948, and December 31, 1949, were as follows:

| | Dec. 31— | |
|---|---|---|
| | 1948 | 1949 |
| *Assets* | | |
| Cash in bank | $3,216.05 | $27,867.94 |
| U.S. bonds and accrued interest | 65,673.31 | 97,690.31 |
| Security with landlord | 10,235.00 | 10,235.00 |
| Leasehold improvements | 33,840.97 | 33,840.97 |
| Less: Reserve for depreciation | 33,791.76 | 33,803.82 |
| Loans and exchanges | 22,500.00 | |
| Total assets | 101,673.57 | 135,830.40 |
| *Liabilities and capital* | | |
| Accounts payable | 3,892.24 | 4,580.51 |
| Tenants' securities | 4,824.84 | 6,098.84 |
| Expenses and taxes accrued | 630.28 | 838.66 |
| Federal income tax payable | 5,733.30 | 12,491.33 |
| Total liabilities | 15,080.66 | 24,009.34 |
| Capital stock issued and outstanding | 5,000.00 | 5,000.00 |
| Surplus—December 31 | 81,592.91 | 106,821.06 |
| Total capital | 86,592.91 | 111,821.06 |
| Total liabilities and capital | 101,673.57 | 135,830.40 |

The following is a summary of petitioner's net income as reported for Federal income tax purposes, the Federal income tax reported, the dividend payments, and the accumulated earnings and profits appearing on its books (after adjustments for sundry debits and credits) at the close of each of the following years:

| Year | Net income per return | Income tax | Dividends | Earnings and profits |
|---|---|---|---|---|
| 1944 | $11,438.48 | $4,877.08 | (1) | $27,298.41 |
| 1945 | 16,786.16 | 4,000.19 | (1) | 40,084.38 |
| 1946 | 30,226.00 | 15,248.53 | (1) | 54,642.69 |
| 1947 | 29,254.13 | 8,004.69 | 2 $9,000 | 64,450.11 |
| 1948 | 24,933.20 | 5,733.30 | (1) | 81,592.91 |
| 1949 | 37,719.48 | 12,491.33 | (1) | 106,821.06 |

1 None.
2 This amount does not represent a dividend declared and paid in 1947, but represents a surplus adjustment for a prior year.

The "quick" assets, "quick" liabilities, and the excess of "quick" assets over "quick" liabilities on December 31, 1944 through 1949, were as follows:

| Quick assets | Dec. 31— | | | | | |
|---|---|---|---|---|---|---|
| | 1944 | 1945 | 1946 | 1947 | 1948 | 1949 |
| Cash | $2,273.26 | $6,793.25 | $7,272.19 | $30,526.91 | $3,216.05 | $27,867.94 |
| Investments (U.S. bonds) | 3,000.00 | 9,000.00 | 24,450.00 | 24,450.00 | 65,673.31 | 97,690.31 |
| Loans and misc. rec | 27,380.57 | 32,266.75 | 37,424.60 | 25,880.01 | 22,500.00 | |
| Total quick assets | 32,653.83 | 48,060.00 | 69,146.79 | 80,856.92 | 91,389.36 | 125,558.25 |
| Quick liabilities | 10,604.53 | 13,115.61 | 19,604.76 | 21,703.14 | 15,080.66 | 24,009.34 |
| Excess | 22,049.30 | 34,944.39 | 49,542.03 | 59,153.78 | 76,308.70 | 101,548.91 |

If the petitioner's section 102 net income in the amount of $26,926.47 had been distributed to its sole stockholder, Isaac Alper, in 1949, his additional surtax liability would have amounted to $12,721.74.

Substantial personal loans were made by petitioner to Alper during the years 1944 through 1948.

The following is a statement of the application of petitioner's earnings for 1949:

Source of funds:
| | |
|---|---|
| Cash on hand Jan. 1, 1949 | $3, 216. 05 |
| Net earnings after taxes and before depreciation charges | 25, 240. 05 |
| Decrease in loans and exchanges | 22, 500. 00 |
| Increase in total liabilities | 8, 928. 68 |
| Total funds | 59, 884. 94 |

Disposition of funds:
| | |
|---|---|
| Increase in U.S. bonds and interest | 32, 017. 00 |
| Cash on hand Dec. 31, 1949 | 27, 867. 94 |

In 1949 the petitioner desired to acquire either the leased premises or another building so as to protect itself against the possibility of being unable to renew its lease upon its expiration in 1964. It, however, possessed no option to purchase the premises and the owner of the fee, the estate of James Gridley, Inc., had in noway committed itself to dispose of the building.

On February 24, 1956, the respondent notified the petitioner that a statutory notice of deficiency for the year 1949 was proposed pursuant to section 102 of the 1939 Code. On March 19, 1956, the petitioner submitted a statement to the respondent pursuant to section 534 of the 1954 Code which contained the grounds upon which it relied to justify the accumulation of its earnings, together with certain facts on which those grounds were based. The statement reads as follows:

### I.
#### GROUNDS UPON WHICH THE TAXPAYER RELIES

(A) The welfare of the corporation would have been jeopardized by the distribution of any part of its earnings.

(B) The continued corporate existence can be insured only by the full retention of all earnings.

### II.
#### FACTS WHICH SHOW THE BASIS OF THE GROUNDS

(1) The corporation was organized in October of 1924.

(2) The corporation has never engaged in any business other than that of operating a leasehold, (excluding the normal investments of funds).

(3) Business operations of the corporation commenced with the leasing of a portion of a building located at 115 West 30th Street, New York City.

(4) Beginning with October 1, 1927, the corporation became the lessee of the entire building. The present lease was entered into on October 1, 1946 and by reason of extensions, expires on January 31, 1967.

(5) The corporation has, at various times, both prior to 1949 and subsequent thereto, sought to purchase the fee.

(6) The corporation has, at various times, contemplated the purchase of comparable properties, but has been, at all times, deterred by the reasonable expectation that the purchase of the fee would eventually materialize.

(7) The purchase, preferably, of the said fee, or, in the alternate, of some comparable property is and always was a condition for the continued existence of the corporation.

(8) The purchase of the said fee, or any comparable property, would have required a large amount of cash, over and above purchase money mortgages.

(9) The total of the capital and accumulated surplus at any time in the history of the corporation, has been, by itself, insufficient for such purpose, and, in the event of a purchase, further and additional funds would have been required.

(10) In such circumstances, since a purchase would have been frustrated by inability to secure the necessary additional funds, it was essential to conserve any and all funds, from whatsoever source, thus minimizing the amount of additional funds to be secured and increasing the possibilities of success in securing the balance.

(11) There was at all times a reasonable certainty in the minds of the taxpayer's officers that the fee of the property at 115 West 30th Street, New York City, would ultimately be acquired. There was the further certainty that, if such fee would not be acquired, comparable property would have to be purchased.

(12) The failure to acquire the said fee or to purchase comparable property would inevitably result in the termination of the corporate business and existence.

(13) There is a reasonable certainty that the purchase of the fee will be accomplished in 1956. At such time, funds over and above the resources of the taxpayer, will be required.

On May 31, 1956, the respondent issued a statutory notice of deficiency for 1949 which included a determination of a deficiency based on section 102 of the 1939 Code.

Petitioner's earnings and profits for 1949 were accumulated beyond the reasonable needs of its business, and it was availed of during 1949 for the purpose of preventing the imposition of surtax upon its sole shareholder by means of permitting the accumulation of earnings and profits.

OPINION.

Respondent has determined that petitioner was availed of during 1949 for the purpose of preventing the imposition of surtax upon its sole stockholder within the purview of section 102, I.R.C. 1939.[1]

[1] SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following :

27½ per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus

38½ per centum of the undistributed section 102 net income in excess of $100,000.

The petitioner contends (1) that there was here effected at least a partial shift in the burden of proof to the respondent which he has failed to meet and (2), in the alternative, if the petitioner bears the full burden of proof, it nevertheless has established that the earnings accumulation in question did not exceed its reasonable business needs and that it was not availed of for the purpose of preventing the imposition of surtax upon its shareholder within the meaning of section 102 of the 1939 Code.

With respect to its position concerning the burden of proof under section 534 of the Internal Revenue Code of 1954,[2] the petitioner contends that in every proceeding before the Tax Court of the United States involving the corporate surtax imposed by section 531 of the 1954 Code,[3] there is necessarily involved as at least a partial basis for the notice of deficiency an allegation that all or some part of the earnings and profits have accumulated beyond the reasonable needs of the business. It further contends that section 534 effects a complete shift in the burden of proof in such cases to the respondent.

In support of its position, petitioner argues that section 534 must be read and construed in conjunction with section 535 (c) (1) of the 1954 Code.[4] Section 535 (c) (1) provides for an accumulated earnings credit equal to that part of the earnings and profits for the taxable

---

[2] SEC. 534. BURDEN OF PROOF.

(a) GENERAL RULE.—In any proceeding before the Tax Court involving a notice of deficiency based in whole or in part on the allegation that all or any part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business, the burden of proof with respect to such allegation shall—

(1) if notification has not been sent in accordance with subsection (b), be on the Secretary or his delegate, or

(2) if the taxpayer has submitted the statement described in subsection (c), be on the Secretary or his delegate with respect to the grounds set forth in such statement in accordance with the provisions of such subsection.

(b) NOTIFICATION BY SECRETARY.—Before mailing the notice of deficiency referred to in subsection (a), the Secretary or his delegate may send by registered mail a notification informing the taxpayer that the proposed notice of deficiency includes an amount with respect to the accumulated earnings tax imposed by section 531.

(c). STATEMENT BY TAXPAYER.—Within such time (but not less than 30 days) after the mailing of the notification described in subsection (b) as the Secretary or his delegate may prescribe by regulations, the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which the taxpayer relies to establish that all or any part of the earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business.

[3] SEC. 531. IMPOSITION OF ACCUMULATED EARNINGS TAX.

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the accumulated taxable income (as defined in section 535) of every corporation described in section 532, an accumulated earnings tax equal to the sum of—

(1) 27½ percent of the accumulated taxable income not in excess of $100,000, plus

(2) 38½ percent of the accumulated taxable income in excess of $100,000.

[4] SEC. 535. ACCUMULATED TAXABLE INCOME.

(c). ACCUMULATED EARNINGS CREDIT.—

(1) GENERAL RULE.—For purposes of subsection (a), in the case of a corporation other than a mere holding or investment company the accumulated earnings credit is (A) an amount equal to such part of the earnings and profits for the taxable year as are retained for the reasonable needs of the business, minus (B) the deduction allowed by

year which are retained for the reasonable needs of the business. This provision was added to the Internal Revenue Code in 1954. Under prior law, if any part of an accumulation of earnings was determined to be unreasonable, the entire accumulation was subject to surtax pursuant to section 102(a) of the 1939 Code. The petitioner therefore maintains that every deficiency determined by the Commissioner under section 531 of the 1954 Code must necessarily include either a partial or total disallowance of the accumulated earnings credit, and that such an implicit disallowance constitutes an allegation that all or part of the earnings and profits are unreasonably accumulated, within the meaning of section 534 (a) of the 1954 Code.

In the first place, the petitioner's reliance upon sections 531 and 535(c) of the 1954 Code is clearly misplaced because those sections are not applicable to 1949, the year in issue, but apply only to taxable years beginning after December 31, 1953, and ending after August 16, 1954.[5] The deficiency here involved therefore was determined under section 102 of the 1939 Code. (Section 534 of the 1954 Code, of course, is made applicable to the instant proceeding by section 534(e), as amended on August 11, 1955.)

Assuming, *arguendo*, that petitioner is correct in its contention that in every proceeding involving section 531 of the 1954 Code there is necessarily a deficiency based wholly or in part on the allegation that all or part of the earnings and profits have accumulated beyond the reasonable needs of the business within the meaning of section 534(a), it nevertheless does not follow that in every such case section 534 effects either a partial or complete shift in the burden of proof to the respondent, as petitioner contends.

Section 534(a) prescribes only two situations in which a shift in the burden of proof may occur: (1) Where notification has not been sent by the respondent in accordance with section 534(b), or (2) where such notification has been sent and the taxpayer has submitted a statement of the grounds on which it relies, together with facts sufficient to show the basis thereof. If the respondent has failed to notify the taxpayer informing him of the proposed notice of defi-

subsection (b)(6). For purposes of this paragraph, the amount of the earnings and profits for the taxable year which are retained is the amount by which the earnings and profits for the taxable year exceed the dividends paid deduction (as defined in section 561)- for such year.

[5] I.R.C. 1954.
SEC. 7,851. APPLICABILITY OF REVENUE LAWS.
(a) GENERAL RULES.—Except as otherwise provided in any section of this title—
(1) SUBTITLE A.—
(A) Chapters 1, 2, 4, and 6 of this title shall apply only with respect to taxable years beginning after December 31, 1953, and ending after the date of enactment of this title, and with respect to such taxable years, chapters 1 (except sections 143 and 144), and 2, and section 3801, of the Internal Revenue Code of 1939 are hereby repealed.

ciency in accordance with section 534(b) of the 1954 Code, the burden of proof with respect to proving the extent, if any, to which the accumulation is unreasonable is on the Commissioner. If, however, such notification has been sent the taxpayer and he has submitted a statement pursuant to section 534(c) showing sufficient grounds to justify the accumulation of the funds alleged to be excessive and beyond the reasonable needs of the taxpayer, together with facts sufficient, if true, to prove the existence of such grounds, the burden of proof is on the respondent only with respect to the grounds set forth in the statement, together with the burden of disproving the facts stated in support of such grounds. In either situation, of course, the ultimate burden of proving that the corporation was not availed of for the purpose of preventing the imposition of surtax upon its shareholders remains on the taxpayer. *Pelton Steel Casting Co.*, 28 T.C. 153, affd. 251 F. 2d 278. The burden of going forward with its proof, however, remains with the petitioner.

As we understand the meaning of section 534(c), the statement filed by a taxpayer can result in partially shifting the burden of proof to the respondent only if (1) it shows grounds which actually are sufficient to justify the accumulation of earnings as not being in excess of the reasonable needs of the business, and (2) it contains facts which are sufficient to support those grounds. Cf. *Dixie, Inc.*, 31 T.C. 415, on appeal (C.A. 2). In the absence of such a statement, the notification sent by the respondent operates to remove the possibility of a shift in the burden of proof to him. The petitioner therefore is incorrect in its contention that in every case before this Court involving a determination of a deficiency under section 531 of the 1954 Code there is an automatic shift in the burden to the respondent.

In the instant case, the statutory notice of deficiency when read together with the advance notice issued by the respondent on February 24, 1956, clearly discloses that the deficiency is based in part on the allegation that petitioner's earnings and profits have been permitted to accumulate beyond its reasonable business needs, within the meaning of section 534(a) of the 1954 Code.

The petitioner has asserted as grounds in its statement filed with respondent pursuant to section 534(c) that—

(A) The welfare of the corporation would have been jeopardized by the distribution of any part of its earnings.

(B) The continued corporate existence can be insured only by the full retention of all earnings.

The first ground alleged by petitioner is so broad in scope and so nebulous in its nature as to fail to constitute a statement of a ground which would justify an accumulation of surplus under section 102 of the 1939 Code. To the extent that any business taxpayer has a de-

creased cash or quick asset reserve, its "welfare" is lessened, and it is therefore "jeopardized." This is true regardless of the existence of a plan or business purpose which would require the accumulation of funds. It is so generally true with respect to all business endeavors as to accomplish nothing by its statement.

It is also true that this ground is so broadly stated as to carry with it the seeds of its own destruction. That "the distribution of *any part* of its earnings" would jeopardize the business is, of course, patently untrue. We cannot find that this ground complies with the requirements of the statute. (Emphasis added.)

With respect to the second ground stated, we assume that it would, if true, justify the accumulation of at least part of the funds here determined to be excessive.

However, in our opinion, the timely statement filed by petitioner herein fails to state facts sufficient to support the indicated grounds, whether or not the grounds are sufficient to comply with the requirements of section 534. The "statement of facts," after reciting that petitioner was engaged in the business of operating a leasehold, discloses in substance only that it contemplated the purchase of the land and building on which it held a leasehold and that such an acquisition would require a substantial amount of cash. Without stating any factual basis or explaining the reasons therefor, the statement asserts that the purchase of the fee is and always was a condition for the existence of the corporation. The obvious answer to this assertion is the fact that petitioner has conducted the same type of business continuously since 1924, and consistently increased its surplus accumulation, without at any time owning a single piece of property. The statement does not show the time when the petitioner contemplated the purchase of the property it held under lease, nor does it indicate the amount of cash which would be required for such a transaction. Further, no disclosure is made as to whether petitioner could secure another lease on the property it held, or whether it would be able to obtain a lease on comparable property upon the expiration of its lease in 1967. Therefore, no facts were stated disclosing whether or not an actual need existed for such an acquisition of property and, if so, whether the need was immediate or remote. Consequently, the facts set forth in petitioner's statement are not sufficiently clear or definite to support the asserted grounds of accumulation so as to comply with the requirements of section 534(c), and petitioner accordingly must assume the entire burden of proof.

Petitioner contends in the alternative that if the burden of proof is upon it, it nevertheless has established that the accumulation in question was not beyond the reasonable needs of the business. Its contention is that its sole income-producing asset is a lease and that, unless the lease is renewed or comparable property is acquired in its place,

it will be without a continuing source of income. Such facts constitute justifiable grounds for the accumulation of earnings without distribution only where there is a specific and definite plan for the acquisition of needed property for use in the business. *Jones* v. *Koma, Inc.*, 218 F. 2d 530; *World Publishing Co.* v. *United States*, 169 F. 2d 186, certiorari denied 335 U.S. 911.

An accumulation of surplus, to be considered as being within the reasonable needs of the business, must be for an immediate business purpose rather than for a purpose which is speculative and indefinite. *Kerr-Cochran, Inc.* v. *Commissioner*, 253 F. 2d 121, affirming 30 T.C. 69; *Bride* v. *Commissioner*, 224 F. 2d 39, affirming a Memorandum Opinion of this Court, certiorari denied 350 U.S. 883.

The record herein does not demonstrate that petitioner's working capital requirements warranted the earnings accumulation in question. The excess of petitioner's "quick assets" (cash, United States bonds and notes) over its "quick liabilities" (the liabilities shown on balance sheet attached to 1949 return), as of December 31, 1949, was $101,548.91. During the period 1944 through 1949 the excess of petitioner's "quick assets" over its "quick liabilities," as of the end of each of those years, was as follows:

| | |
|---|---|
| 1944 | $22,049.30 |
| 1945 | 34,944.39 |
| 1946 | 49,542.03 |
| 1947 | 59,153.78 |
| 1948 | 76,308.70 |
| 1949 | 101,548.91 |

The record therefore indicates a consistent increase in petitioner's working capital. The evidence further discloses that the additional funds obtained by petitioner in 1949 were used to increase its cash position and its investment in United States securities.[6] We are unable to determine from the record the existence of any immediate requirement in the operation of petitioner's business for the substantial amounts of working capital accumulated.

It is apparent from the testimony of petitioner's president and sole stockholder that it desired to acquire the ownership of the land and building which it held under lease, and had hopes of reaching agree-

---

[6] Source of funds:

| | |
|---|---|
| Cash on hand Jan. 1, 1949 | $3,216.05 |
| *Net earnings after taxes and before depreciation charges* | 25,240.05 |
| Decrease in loans and exchanges | 22,500.00 |
| Increase in total liabilities | 8,928.68 |
| | |
| Total funds | 59,884.94 |

Disposition of funds:

| | |
|---|---|
| Increase in U.S. bonds and interest | 32,017.00 |
| | |
| Cash on hand Dec. 31, 1949 | 27,867.94 |

ment with the owner. However, the petitioner in 1949 had no option to purchase the building and had not made any commitment to purchase it, nor was the owner of the property in any way committed to sell. By 1949 the negotiations had not progressed to a point where it appeared that the parties would reach an agreement. Further, if petitioner actually needed in 1949 to acquire the leased property, the need was not then immediate because its lease had 15 more years to run before expiration. Petitioner's intention eventually to purchase the building and land which it held under lease is too uncertain and indefinite a plan to justify the accumulation of its earnings and profits. Consequently, we conclude from an examination of the record herein that petitioner in 1949 had accumulated its earnings and profits beyond its reasonable business needs.

The surtax provided by section 102 of the 1939 Code is not imposed merely because of the existence of an unreasonable accumulation of earnings. Unless the purpose underlying the accumulation is the prevention of the imposition of income tax upon the corporate shareholder, the section 102 surtax may not be imposed. *Cecil B. DeMille*, 31 B.T.A. 1161, affd. 90 F. 2d 12. However, upon proof of an unreasonable accumulation, the statute presumes the existence of the prohibited purpose, for section 102(c) provides:

The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.

The petitioner has failed to establish by a clear preponderance of the evidence that it was not availed of for the purpose of preventing the imposition of income tax upon the sole stockholder, Isaac Alper. In fact, the record contains affirmative evidence that petitioner *was* availed of for such a purpose. Its earnings and profits increased from zero at the time of its inception in 1924 to $106,821.06 at the end of 1949. During all of that time, with one possible exception, no dividends were paid to Alper.[7] No dividend was paid during 1949, but if the petitioner's section 102 net income in the amount of $26,926.47 had been distributed to Alper in 1949, his additional income tax liability would have been $12,721.74.

In addition, Alper in 1949 was cognizant of the existence of section 102 of the 1939 Code and was aware of the effect of an unjustified accumulation of corporate surplus.

In view of the foregoing evidence, as well as the statutory presumption created by the existence of the unreasonable earnings accumulation, we are unable to find that the petitioner was not availed

---

[7] The record shows a surplus adjustment in the amount of $9,000 for 1947 which may have represented a dividend for a year prior to 1944.

of for the purpose of preventing the imposition of the individual surtax upon its sole stockholder. Accordingly, the respondent's determination of liability for surtax upon accumulated earnings under section 102 of the 1939 Code must be sustained.

*Decision will be entered for the respondent.*