INDUSTRIAL ELECTRIC SALES & SERVICE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

E. B. HALE AND DOROTHY P. HALE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6585-74, 6590-74.    Filed January 29, 1976.

*Jeff D. Batts,* for the petitioners.
*Thomas E. Bulleit* and *Mathew E. Bates,* for the respondent.

OPINION

SIMPSON, *Judge:* In this consolidated case, the Commissioner has objected to the petitioners' motion pursuant to Rule 72, Tax Court Rules of Practice and Procedure,[1] for the production of statements and memorandums of interviews with 16 people questioned by the Commissioner's agents.

Petitioner, Industrial Electric Sales & Service, Inc. (Industrial), is a corporation engaged in the business of repairing and installing electrical motors. During the years in issue, Mr. Hale was Industrial's president and principal owner. The major issue in this consolidated case is whether Industrial had unreported income from the sale of scrap metal which Mr. Hale received as a dividend and failed to report.

During the course of their investigation, the Commissioner's agents interviewed several present and former employees of Industrial, alleged purchasers of the scrap metal, and other persons whose connection with the case is undisclosed by the record. On August 19, 1975, Industrial requested the production of any statements or summaries which resulted from such interviews (third-party statements). On September 16, 1975, the Commissioner declined to produce the requested third-party statements for a variety of reasons. On September 23, 1975, the petitioners moved for an order compelling production of such statements as well as various other reports which had been previously requested. A hearing was held on October 15, 1975, at which the Commissioner agreed to produce certain reports for the petitioners. He also agreed to submit the special agent's report to the Court for an in camera determination of the portions of the report subject to governmental privilege. He refused to produce the third-party statements. The parties have filed legal memorandums to justify their respective positions. The only reason raised by the Commissioner to bar disclosure is that the third-party statements may be used for impeachment purposes.

The reviser's note for Rule 70(b) provides in part:

With respect to discovery of an opponent's materials which may be used for impeachment purposes, the same Advisory Committee observed * * * that "the

---

[1] All references to a rule are to the Tax Court Rules of Practice and Procedure.

courts have in appropriate circumstances protected materials that are primarily of an impeaching character." The Committee concluded that this type of materials is one illustration of "the many situations, not capable of governance by precise rule, in which the courts must exercise judgment. * * *" [60 T.C. 1098 (1973).]

We have previously held that the mere possibility that an interested witness may "tailor" his testimony to conform to the fact sought to be discovered is not sufficient reason to deny discovery. *P. T. & L. Construction Co.,* 63 T.C. 404, 412-413 (1974); see also *Nena L. Matau Dvorak,* 64 T.C. 846, 851 (1975).

The Commissioner argues that most of the facts in the third-party statements relate to the operation of Industrial's business and its recordkeeping system. Since this is information of which the petitioners should be fully aware, he argues that the only reason for its discovery is to frustrate effective cross-examination and to avoid impeachment. Cf. *Mort v. A/S D/S Svendborg,* 41 F.R.D. 225 (E.D. Pa. 1966); *Hikel v. Abousy,* 41 F.R.D. 152 (D. Md. 1966); *Stone v. Marine Transport Lines, Inc.,* 23 F.R.D. 222 (D. Md. 1959). However, in this case, the Commissioner claims that a part of the underpayment of tax was due to fraud, and therefore, he has the burden of proving such fraud. Sec. 7454(a), I.R.C. 1954; Rule 142(b); see *Ross Glove Co.,* 60 T.C. 569 (1973). To carry such burden, the Commissioner may have to call as witnesses some of those persons whose statements were taken. Furthermore, the Commissioner does not even contend that the statements will be used primarily for impeachment purposes—he merely asserts that they may be used for such purposes. Under these circumstances, the Commissioner has failed to convince us that the third-party statements should not be produced.

The Commissioner's interests in preserving the impeachment value of the third-party statements can be adequately protected without completely denying disclosure. The Commissioner has already served upon the petitioners a request for admissions pursuant to Rule 90. Through this request, the Commissioner can effectively require the petitioners to state the factual basis for their position in this case. By delaying production of the requested material until after the petitioners respond to the request for admissions, the petitioners will be required to present their facts without any advance knowledge as to the evidence

secured by the Commissioner. In this manner, the fullest presentation of the evidence is assured.

The Commissioner also suggests that if the statements of Industrial's present employees are disclosed, the petitioners may exert pressure on them to change their testimony. This argument is unconvincing. There is no evidence that the petitioners have exerted or will attempt to exert pressure on Industrial's employees to cause them to testify in accord with the petitioners' version of the facts. Furthermore, if the Commissioner suspects that a witness at trial has changed his testimony because of pressure exerted by the petitioners, the matter can be adequately explored through cross-examination

*An appropriate order will be issued.*