RALPH H. BARGER, JR., A.K.A. RALPH HUBERT BARGER, JR.,
PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 3026-74.    Filed February 5, 1976.

*Henry Hill,* for the petitioner.
*Joyce Elaine Britt,* for the respondent.

### OPINION

STERRETT, *Judge:* Under date of May 5, 1975, petitioner, pursuant to Rule 72, Tax Court Rules of Practice and Procedure, served on respondent a Request for Production of Documents which request consisted of nine numbered paragraphs and called upon respondent to produce for petitioner's inspection and copying several documents compiled with respect to the above-captioned case. This request called for the production of the following documents:

(1) Copies of statements of petitioner and an individual allegedly made on May 19, 1972, in the presence of respondent's special agent and revenue agent.

(2) Copies of statements of the owner of a motorcycle dealership.

(3) Copies of business records and statements of the owners of a mortuary.

(4) Copies of statements of an individual concerning the purchase of an automobile.

(5) Copies of statements of an individual concerning the purchase of an automobile.

(6) Copies of statements of an individual concerning transactions with petitioner.

(7) Copies of a statement of petitioner allegedly made in October 1975 to a third party concerning his financial position.

(8) Copies of statements of an individual concerning the purchase of an automobile.

(9) Copies of all special agent's reports and revenue agent's reports concerning this case.

Under date of May 28, 1975, respondent responded to this request by making available to petitioner the statements of petitioner requested in paragraph (1) and objecting to the production of all of the other requested documents. Respondent subsequently has stipulated that the information requested in paragraph (6) will not be used at trial because the third party involved cannot be located.

Petitioner then on July 7, 1975, pursuant to Rule 104(b) of this Court, moved for an order compelling respondent to produce the requested documents and asked that a hearing on this motion be scheduled. This request was granted and a hearing was held on September 4, 1975. On September 22, 1975, respondent filed a Motion for Protective Order and a Motion to Strike petitioner's request.

At this hearing testimony was heard from respondent's special agent James W. Davis (hereinafter Davis) and respondent's revenue agent Richard A. Schmick (hereinafter Schmick). Both parties subsequently filed memorandums in support of their respective positions.

Respondent objects to the production of these documents on several grounds. With respect to the third-party statements and business records he asserts that the individuals interviewed are identified and readily available to petitioner, that the business records sought are not in his possession, and that this information was gathered in anticipation of litigation. This Court has recently issued three opinions that discuss these and other related matters. *P.T.&L. Construction Co.,* 63 T.C. 404 (1974); *Branerton Corp.,* 64 T.C. 191 (1975); *Nena L. Matau Dvorak,* 64 T.C. 846 (1975).

In *Dvorak* petitioner sought the production of third-party statements and respondent objected on the grounds that petitioner already had sufficient knowledge of the evidence and that the individuals were readily available for interview. This argument was rejected based on the philosophy stated in *United States v. Jerrold Electronics Corp.,* 168 F. Supp. 146, 148 (E.D. Pa. 1958), and which the Court adopted at page 851 as follows: "When the information sought relates to the details of the case

against a defendant which will eventually be brought out at trial, as is the case herein, such information should be given."

Respondent's objection that he is not in possession of the requested business records is misplaced. Clearly only those records that "are in the possession, custody, or control of the party on whom the request is served need be produced." Rule 72(a)(1), Tax Court Rules of Practice and Procedure. Petitioner, however, is requesting only copies of those records that respondent possesses.

Respondent's final ground is that these documents were obtained in anticipation of the criminal tax litigation instituted against petitioner which includes many of the elements of a civil fraud case. Respondent points to an unbroken chain which includes his privity with the United States and his policy of asserting deficiencies and civil fraud penalties following the criminal tax litigation.

In *P.T.&L.,* this argument was denied partly because the respondent had "offered us little to support his claim beyond conclusionary statements to that effect." *P.T.&L. Construction Co., supra* at 408. Trying to perfect his argument, respondent made a more definitive showing in *Dvorak,* but this Court held that the facts presented did not support his position. *Nena L. Matau Dvorak, supra* at 850. Respondent believes that a presentation of the facts in this case will support his claim.

The investigation into petitioner's financial affairs began as the result of a newspaper article. Special Agent Davis and Revenue Agent Schmick were assigned to this case and they conducted a joint investigation. The duties of a special agent include the investigation of alleged criminal violations of the Internal Revenue Code and the gathering of evidence to prove or disprove such allegations. At the conclusion of his investigation a report is written and a recommendation is made. The duties of a revenue agent include the examination of tax returns and the determination of the correct tax liability. At the conclusion of his work a report is written and a recommendation is made.

These men worked together gathering information to be used in their reports. Petitioner did not cooperate in this investigation, and Davis and Schmick used the net worth and expenditures method to reconstruct petitioner's income.

Before writing his report Davis discussed and evaluated the evidence with his group supervisor. At this point a report either

recommending or not recommending further prosecution of this case could have been written. Davis then wrote a first draft of his report in which he recommended prosecution. This report was then reviewed by an attorney in the Regional Counsel's office and an attorney in the United States Attorney's office. This review was not part of the regular procedure but was done to expedite the case in view of other actions instituted against the petitioner by other Federal and State authorities.

As a result of this review one additional witness was interviewed and the information obtained was included. The report was not materially altered by this review and it was not prepared at the request of either attorney who reviewed it. The report was then finalized and submitted to the District Director who is the first link in the chain that eventually leads to the Department of Justice.

The report itself is broken into several parts. The first part contains a brief summary of the recommended charges and the years and amounts potentially in issue. There is also a brief history of the taxpayer. The next section contains the method of proof and an explanation of each item included. The final section contains the conclusion that restates the opening recommendations and his opinion that the report should be forwarded for criminal prosecution.

Schmick also prepared a report based on his work. It contained in the first part a brief history of the petitioner, a discussion of some of the issues present, and a recommendation that the civil fraud penalty be imposed. The second part contained his calculation of the proper tax liability due. To substantiate his recommendation Schmick's report referred to Davis' report.

We do not believe that facts as presented in this case should cause us to believe that these third-party statements or records were gathered in anticipation of litigation. Both Davis and Schmick interviewed individuals to gather information from which they could prepare their reports. These documents represent the raw facts which served as the basis for their recommendations. Despite the joint nature of their investigation there is no indication that it led to reports that were special in nature.

We do not believe that the initial review given to Davis' report changes our conclusion. The record clearly indicates that this report was not prepared for either attorney and that only one

minor addition resulted. The review was done to expedite the review process, and while this action is not common, at the same time it is not extraordinary. This report, as did Schmick's, ultimately found its way into the normal chain of review. Both Davis and Schmick testified that their recommendations do not represent the final authority as to whether litigation will be initiated. *P.T.&L. Construction Co., supra; Nena L. Matau Dvorak, supra.*

Respondent has voluntarily produced his records with respect to one statement made by petitioner (par (1)), but objects to the production of another statement (par (7)) on the grounds that it will be used for impeachment purposes. The substance of the statement in issue relates to the status of petitioner's financial condition during the years in issue. The alleged deficiencies outstanding against petitioner stem from respondent's reconstruction of petitioner's income using the net worth method.

When using this method it is vitally important that the level of petitioner's net worth at the beginning of the period in issue be established. Petitioner has alleged that he had a substantial net worth at that time. The statement in issue tends to contradict that allegation. The statement was made by petitioner to, and was acquired by the respondent from, a third party. Consequently we do not believe that it is within the purview of Rule 70(c) since, in effect, it is merely a third-party statement.

In the notes to Rule 70(b), Tax Court Rules of Practice and Procedure, we state:

With respect to discovery of an opponent's materials which may be used for impeachment purposes, the same Advisory Committee observed (House Doc. No. 91-291, *supra,* pp. 25-26) that "the courts have in appropriate circumstances protected materials that are primarily of an impeaching character." The Committee concluded that this type of materials is one illustration of "the many situations, not capable of governance by precise rule, in which the courts must exercise judgment. The new subsections in Rule 26(b) do not change existing law with respect to such situations." [60 T.C. at 1098.]

Using this as a guide we believe that respondent should not be compelled to produce his records with respect to this statement.

The status of petitioner's financial position should be a matter that is uniquely within his own knowledge. The statement in issue appears to be contradictory to petitioner's allegations.

Respondent's objection seems valid.[1] Consequently we are disposed to deny this portion of petitioner's request.

In the last portion of his motion petitioner has requested that the respondent produce all of the special agent and revenue agent reports concerning this case. Respondent objects on the grounds that the reports were prepared in anticipation of litigation, that portions of them will be used for impeachment purposes, and that the information in them is subject to governmental privilege.

We have previously discussed respondent's first objection with respect to the third-party documents and we believe what we said earlier is equally applicable here. With respect to his second objection we only have respondent's bare assertion that portions of the report will be used for impeachment purposes. There has been no attempt on his part to be definitive, and respondent in his subsequent memorandums has not argued this point. We believe that this objection must be rejected.

With respect to his last objection, respondent argues that these reports contain advisory and analytical material that cannot be reasonably separated from the other material in the reports. Respondent concludes that these reports need not be produced since they contain the type of material intended to be protected by the governmental privilege. For support respondent cites the recent Supreme Court case of *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132 (1975), and the Freedom of Information Act, 5 U.S.C. sec. 552, and the exemption contained in 5 U.S.C. sec. 552(b)(5).[2]

In *EPA v. Mink,* 410 U.S. 73, 91 (1973), the Supreme Court said:

It appears to us that Exemption 5 contemplates that the public's access to internal memoranda will be governed by the same flexible, commonsense approach that has long governed private parties' discovery of such documents involved in litigation with Government agencies. And, as noted, that approach extended and continues to extend to the discovery of purely factual material appearing in those documents in a form that is severable without compromising the private remainder of the documents.

---

[1] See and compare *Industrial Electric Sales & Service, Inc.,* 65 T.C. 844 (1976).

[2] 5 U.S.C. sec. 552 reads in part as follows:

(a) Each agency shall make available to the public information as follows:

* * *

(b) This section does not apply to matters that are—

* * *

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

From Davis' verbal description of his report it appears that the report is severable.

Davis described his report as containing three sections, the second of which contains the method of proof and an explanation of each item included in the net worth computations. This section contains a presentation of the raw facts of the case. It does not contain any material in which Davis argued or drew conclusions from the facts. His recommendations, opinions, and/or conclusions are separately stated in the final part of the report. It is these thoughts which are part of the deliberative process that should be protected from discovery. *Montrose Chemical Corp. of California v. Train,* 491 F. 2d 63 (D.C. Cir. 1974); *NLRB v. Sears, Roebuck & Co., supra* at 150-153; *P.T.&L. Construction Co., supra* at 411. The first part of the report contains some narrative and a summary of the recommended charges. The narrative portions of this section should be supplied to the extent they can be reasonably severed.

Petitioner has also requested that respondent produce the revenue agent's reports in this case. Schmick verbally described his report as containing narrative, a discussion of the issue present, his recommendation, and his calculation of the proper tax liability. It does not appear that this report contains any information not supplied in Davis' report. For support of his recommendations Schmick's report refers to Davis' report, and Schmick testified that every statement of fact in his report was in Davis' report. Consequently, we see no need to order respondent to produce this document. *Branerton Corp., supra* at 201.

Having considered the evidence in the record, the arguments by the parties, and respondent's stipulation, we hold the respondent should be compelled to produce those documents requested by petitioner in paragraphs (1), (2), (3), (4), (5), and (8). Respondent should also be compelled to produce the special agent's report as requested in paragraph (9), but only those portions of the report as discussed above.

Respondent, however, should not be compelled to produce the revenue agent's report as requested in paragraph (9) or the documents requested by petitioner in paragraphs (6) and (7). Further, we believe that respondent's Motion for Protective

Order and Motion to Strike should be denied except insofar as such denials are inconsistent with our opinion as set forth above.

*An appropriate order will be entered.*