JAMES H. RUTTER AND MARIE R. RUTTER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

J. H. RUTTER REX MANUFACTURING CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 15061–81, 6343–82.     Filed December 12, 1983.

*Edward B. Benjamin, Jr.*, for the petitioners, and *Robert W. Nuzum*, for the petitioner in docket No. 6343–82.

*H. Karl Zeswitz, Jr.*, for the respondent.

### OPINION

SIMPSON, *Judge*: This matter is before the Court on the petitioner's motion under Rule 142(e) of the Tax Court Rules of Practice and Procedure[1] for a ruling, prior to trial, on the sufficiency of the petitioner's statement under section 534(c) of the Internal Revenue Code of 1954[2] and on the petitioners' motion under Rule 50(b) to compel production of two documents.

In accordance with section 534(b), the Commissioner notified J. H. Rutter Rex Manufacturing Co., Inc. (the petitioner), that he proposed to issue a notice of deficiency for the taxable years 1976, 1977, 1978, and 1979 which would include an amount with respect to the accumulated earnings tax imposed by section 531. The petitioner timely submitted a statement pursuant to section 534(c). Thereafter, the Commissioner issued a notice of deficiency determining an accumulated earnings tax under section 531 of $446,658 for 1977 and $598,077 for 1978. The notice of deficiency claimed no accumulated earnings tax for 1976 or 1979.

In his notice of deficiency, the Commissioner found that the petitioner retained current earnings and profits of $1,188,723 in 1977 and $1,582,018 in 1978 and determined that such amounts were subject to the section 531 tax. In his answer, the Commissioner alleges that the petitioner had an accumulated surplus of $4,843,050 in 1977 and $5,135,415 in 1978, that the petitioner paid no dividends in the years 1974 through 1979, and that if the petitioner had distributed its accumulated earnings and profits in 1977 and 1978, its shareholders would have paid an additional $1,103,911 in personal income taxes.

Section 534(c) provides that "the taxpayer may submit a statement of the grounds (together with facts sufficient to show the basis thereof) on which it relies to establish that all

---

[1] Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.

[2] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

or any part of its earnings and profits have not been permitted to accumulate beyond the reasonable needs of the business," and if such a statement is submitted, section 534(a)(2) provides that the burden of proof shall be on the Commissioner with respect to the grounds set forth in such statement. *Capital Sales, Inc. v. Commissioner*, 71 T.C. 416, 435 (1978), revd. and remanded on another issue sub nom. *Simon v. Commissioner*, 644 F.2d 339 (5th Cir. 1981). Rule 142(e) provides that the Court will ordinarily, on motion, rule prior to trial on whether a section 534(c) statement submitted by the taxpayer is sufficient to shift the burden of proof to the Commissioner pursuant to section 534(a)(2).

For a statement under section 534(c) to shift the burden of proof to the Commissioner, the statement:

> must constitute more than mere notice of an intent to prove the reasonableness of the accumulation. Rather, the taxpayer must show its hand by stating with clarity and specificity the grounds on which it will rely to prove reasonable business needs, and by setting out the facts (not the evidence, but more than conclusions of law) that, if proven, support the alleged business needs for the accumulation. [B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 8.08, at 8–33 (4th ed. 1979); fn. ref. omitted.]

Section 534 and our cases emphasize the need for the taxpayer to present sufficient facts to support the grounds alleged. Sec. 534(c); *Capital Sales, Inc. v. Commissioner*, 71 T.C. at 435–436; *Chatham Corp. v. Commissioner*, 48 T.C. 145, 146–147 (1967); *I. A. Dress Co. v. Commissioner*, 32 T.C. 93, 100–101 (1959), affd. on other grounds 273 F.2d 543 (2d Cir. 1960).

The petitioner is a clothing manufacturer. It presents in its section 534(c) statement seven grounds to support its contention that its earnings and profits were not permitted to accumulate beyond the reasonable needs of the business. Its first ground is that earnings and profits had to be accumulated to supply working capital necessary to conduct normal business operations. In support of such ground, the statement recites the history of the corporation from its formation in the 1930's to its present multiplant operation which supplies a number of large retail establishments. The statement alleges that contracts between the petitioner and a major customer, a company that accounted for 70 percent of the petitioner's business during the period 1976 through 1979, required the

petitioner to keep large amounts of cash on hand. The arrangement between this customer and the petitioner required the petitioner to purchase and pay the customer for piece goods. The petitioner then manufactured finished goods which were placed in the petitioner's inventory awaiting shipping orders from the customer. After the finished goods were shipped, the petitioner billed and received payment from the customer. The petitioner's statement maintains that this cycle usually took about 3 months, but that "in many instances," the cycle had taken up to a year.

The petitioner's statement alleges that during the period from December 1974 to October 1975, it accumulated a large finished goods inventory, valued at $8,500,000 on December 31, 1974, and that its profits for the first half of 1975 were only $1,200. The petitioner's cash reserves during this period were insufficient to meet its piece goods obligations with its customer, and as a result, the petitioner's relationship with this customer deteriorated. Additionally, the statement alleges that this cash shortage cost the petitioner approximately $90,000 in lost cash discounts and interest charges incurred in its own purchases. The petitioner's statement concludes that these "unpredictable fluctuations of orders and accumulations of inventory for which the Company is not compensated" warranted its accumulation of earnings and profits.

In the statement, the petitioner declares that "following the critical cash flow problem that occurred in 1974–1975," it built up its cash reserves because of additional business it expected from its then major customer and from a large new customer. At the end of 1980, the petitioner learned that its major customer might be decreasing its orders from the petitioner, and soon thereafter, the petitioner was informed that such decrease in business indeed would occur. The statement alleges that at this time, the petitioner had to either find another customer the size of the one it was losing or liquidate the business. The petitioner did subsequently locate a suitable replacement customer. Its statement recites that as of August 1, 1981, 4 months after having contracted with the new customer, the petitioner only had accounts payable of approximately $1 million cash and certificates of deposit of $1,500,000, and accounts receivable (not yet due) of $4,500,000. The statement further alleges that the petitioner would not have

been able to secure the new business had it not been able to "finance" its new customer. The statement says that the petitioner's profit margin on the new account was 15 percent and that such profit would have been eliminated had the petitioner been forced to borrow money at 20.5 percent. The petitioner concludes the first section of its statement by reiterating that it is in a volatile industry where it must finance the orders placed by its customers and that "The only way for a business to survive in this industry is to have a substantial amount of cash reserves on hand to meet the consistent unpredictable nature of the industry."

The Commissioner argues that the grounds and supporting facts asserted in the petitioner's section 534(c) statement are inadequate to shift the burden of proof. He contends that the grounds are "either irrelevant or insufficient to justify petitioner's accumulation of the earnings and profits." He describes the petitioner's assertions regarding the necessity to "finance" new customers as "vague, indefinite and incomplete."

In response to the Commissioner's contentions, the petitioner argues that its section 534(c) statement satisfies the sufficiency standard articulated by the Fifth Circuit in *Motor Fuel Carriers, Inc. v. Commissioner*, 559 F.2d 1348, 1352 (1977), revg. a Memorandum Opinion of this Court:

We think §534's language indicates that the statement simply serves a notice function. Whether the "grounds" divulged in the statement subsequently proved convincing is irrelevant to this function. We have examined * * * [the taxpayer's] statement and conclude that it gave the government a sufficiently specific idea of how * * * [the taxpayer] planned to proceed at trial. * * * It is true, as the government observes, that the statement failed to break down the 1968–1970 cost projections into "component costs." But just as the statement is not supposed to be legally sufficient on the question of definiteness, neither is it supposed to be a substitute for testimony at trial. * * *

We have carefully considered the petitioner's section 534(c) statement in light of the Fifth Circuit's opinion in *Motor Fuel Carriers*. We are aware of the distinction drawn by the Court of Appeals between the factual sufficiency required of a section 534(c) statement and the factual sufficiency necessary to prevail at trial. Nevertheless, in the present case, we conclude that where the petitioner's statement fails to provide facts sufficient to show the basis of the asserted grounds, it

fails to satisfy the requirements articulated by the Fifth Circuit.[3] In *Motor Fuel Carriers*, the Fifth Circuit characterized the taxpayer's section 534(c) statement as "lengthy." We could not so characterize the petitioner's statement in the present case.[4]

As to the first ground, the petitioner's statement contains no description of net liquid assets, inventory on hand (either at the beginning or the end of the year), average inventory, net sales for the year, accounts receivable, or operating cycles. The need for working capital may constitute a sufficient ground for accumulating earnings and profits. Sec. 1.537–2(b)(4), Income Tax Regs.; *Faber Cement Block Co. v. Commissioner*, 50 T.C. 317, 329–334 (1968). However, for the petitioner to establish that it accumulated earnings and profits for such reason, it would be necessary for the petitioner to establish such facts as the amounts of its inventory during the years at issue, the operating cycle during such years, the amount of liquid assets on hand, and that during such years, it recognized a need to set aside additional earnings and profits to provide additional working capital. *Henry Van Hummell, Inc. v. Commissioner*, 364 F.2d 746, 750–751 (10th Cir. 1966), affg. a Memorandum Opinion of this Court; *Magic Mart, Inc. v. Commissioner*, 51 T.C. 775, 791–794 (1969); *Faber Cement Block Co. v. Commissioner*, 50 T.C. at 328–336; *John P. Scripps Newspapers v. Commissioner*, 44 T.C. 453, 467 (1965). For the statement to be sufficient, it must include at least the ultimate facts on which the petitioner will rely, and the petitioner's statement contains no such facts for 1977 and 1978.

Moreover, the petitioner has failed to explain in any more than a superficial manner the relationship of the "1974–1975 cash flow crisis" to the accumulations in the years in issue. The petitioner learned in late 1980 of the possible reduction in business received from its major customer during 1976

---

[3]Since we have concluded that the petitioner's statement is insufficient to satisfy the requirements of the *Motor Fuel Carriers* decision, we need not decide whether that case established a different standard than that followed by this Court. See *Capital Sales, Inc. v. Commissioner*, 71 T.C. 416, 435–436 (1978), revd. and remanded on another issue sub nom. *Simon v. Commissioner*, 644 F.2d 339 (5th Cir. 1981).

[4]We have examined the sec. 534(c) statement in the *Motor Fuel Carriers* case and have found that it contains substantially more supporting facts than the sec. 534(c) statement in the present case.

through 1979. The statement does not explain how that decline in business accounted for the accumulations during 1977 and 1978, other than as an illustration of the assertion that the petitioner was involved in an "unpredictable" business. Because of this lack of supporting facts concerning 1977 and 1978, the tax years in issue, the petitioner's statement fails to satisfy the requirements of section 534(c) as to the first ground.

As its second ground, the petitioner asserts that it accumulated earnings and profits in 1977 and 1978 for replacement and improvement of fixed assets. In support thereof, the petitioner's statement alleges that during the period 1976 through 1979 it was actively seeking new customers in order to reopen its New Orleans pants plant. It entered into "preliminary agreements" with a customer to manufacture pants and, as a result, planned improvements to the pants plant during 1976 through 1979. However, the only expenditures listed in the statement, actual or contemplated, were $495,612, in cash, in 1979 for plant improvements, most of which was spent on the New Orleans pants plant, and $250,000, in cash, in 1977 for an electronic cloth pattern marking machine. The Commissioner asserts that the statement fails to set forth "facts which are substantial, material, definite and clear, showing that in 1977 and 1978 concrete plans existed for the replacement and improvement of fixed and movable assets." The Commissioner terms the purchase of the electronic marking machine "irrelevant" since it was purchased for cash prior to the end of 1977.

The regulations under section 537 provide that the reasonable needs of the business include reasonably anticipated needs of the business. However, in order to justify an accumulation of earnings and profits, "the corporation must have specific, definite, and feasible plans for the use of such accumulation." Sec. 1.537–1(b)(1), Income Tax Regs. Such section further provides:

Such an accumulation need not be used immediately, nor must the plans for its use be consummated within a short period after the close of the taxable year, provided that such accumulation will be used within a reasonable time depending upon all the facts and circumstances relating to the future needs of the business. Where the future needs of the business are uncertain or vague, where the plans for the future use of an accumulation are not specific, definite, and feasible, or where the execution of such a plan is

postponed indefinitely, an accumulation cannot be justified on the grounds of reasonably anticipated needs of the business.

To shift the burden of proof, a statement need not contain sufficient evidence to prove the ground set forth therein. *Chatham Corp. v. Commissioner*, 48 T.C. at 146–147. However, section 534(c) explicitly requires that in order to shift the burden of proof with regard to the ground, the statement must provide facts sufficient to show the basis of the asserted ground. Here, we have no facts concerning the assets to be replaced or improved in 1977 or 1978, no facts indicating any specific plans in 1977 or 1978 for the replacement or improvement of assets, and no facts reflecting any decisions in 1977 or 1978 to set aside specific amounts of accumulated earnings and profits for the replacement or improvement of assets. Moreover, the ongoing negotiations intended to provide more business for the New Orleans pants plant had yielded no definite plans for improvements as of the submission of the petitioner's statement on August 21, 1981. Thus, we conclude that the statement is insufficient as to the second ground.

In its statement to justify its accumulation of earnings and profits, the petitioner's third ground is the development, production, and distribution of products. Therein, the petitioner asserts that as a result of having retained earnings and profits, it was among the first to manufacture permanent press clothing. The statement recites: "This process had required large amounts of cash and several different attempts before it was made to work. This expenditure had reinforced the need for maintaining large capital reserves." However, the statement contains no facts showing any need for the accumulation of earnings and profits in 1977 or 1978 for this purpose. In fact, the petition states that in 1965 the petitioner began selling permanent press clothing. The petitioner's section 534(c) statement also asserts that it needed to replace its fleet of five trucks which are usually replaced every 3 years. The total cost of replacing the trucks is listed as approximately $375,000. Yet, the statement contains no facts showing any plans in 1977 or 1978 to replace the trucks or showing whether or when the trucks have in fact been replaced. Under such circumstances, we find that the petitioner's statement fails to contain sufficient facts to support its third ground.

As a fourth ground for its accumulation of earnings and profits, the petitioner's section 534(c) statement says that it feared a disruption in its business due to potential labor troubles. According to the statement, the petitioner experienced a 12-month labor strike in 1954. In 1975, a union election was held at the petitioner's Columbia, Miss., plant in which the union was defeated. From these two events and the assertion that two other New Orleans area companies that had accepted unionization and "shortly thereafter went bankrupt or were forced to sell out," the statement alleges that the accumulation of earnings and profits was necessary "in part" to counter the possibility of labor problems.

The Commissioner points out that no specific amount of the retained earnings and profits is allocated in the statement to the possibility of labor problems. In addition, the statement does not attempt to estimate the cost of hiring new workers or the amount of anticipated losses resulting from labor problems. The Commissioner also contends that there was no attempt to set forth sufficient facts to show the likelihood of labor problems in 1977 and 1978. We agree with the Commissioner. Again, the petitioner's statement fails to set forth sufficient facts in support of its fourth ground.

The fifth ground in the petitioner's statement is that earnings and profits were accumulated to have funds available in the event the petitioner secured new business from the U.S. Government. In support of this ground, the statement alleges that during the 1970's the petitioner was unable to bid on certain Federal clothing contracts because of small business set-asides. Federal regulations restrict eligible bidders on Federal contracts, in some cases, to companies having less than 500 employees. The petitioner had more than 500 employees. In litigation in which the petitioner was involved during 1976 through 1979, the petitioner challenged these regulations. As of the submission of the section 534(c) statement, such litigation was unresolved.

The statement asserts: "During the years in question the Company wisely accumulated funds that were needed if the Company won its litigation and acquired substantial government contracts." The Commissioner characterized this ground as "so vague, uncertain and indefinite as not to constitute a valid ground for the accumulation of any of its earnings and

profits for the taxable years 1977 and 1978." He also asserted that the statement fails to delineate specific amounts of working capital necessary in the event the petitioner prevailed in the litigation and gives no specific facts concerning the status of the litigation except that it was pending during 1976 through 1979.

Our purpose is, of course, not to decide whether the ground justifies the accumulation of earnings and profits in the year at issue. However, we do agree with the Commissioner that the petitioner has again failed to set out sufficient supporting facts with regard to this ground. There were no facts reflecting any plans in 1977 or 1978 for setting aside specific amounts of accumulated earnings and profits to provide working capital for the Government business; in fact, we have no indication that there were any definite plans or hopes for actually securing such business.

In its statement of the grounds for the accumulation of earnings and profits, the petitioner includes as its sixth ground the allegation that there have been no loans to, or expenditures for the benefit of, shareholders and as its seventh ground, the allegation that, except for a de minimis investment, there have been no investments in a business unrelated to that of the petitioner. Section 1.537–2(c) of the Income Tax Regulations treats the making of such loans or investments as evidence that earnings and profits are being accumulated unreasonably; nevertheless, such allegations do support, to some extent, the petitioner's contention that it did not unreasonably accumulate its earnings and profits. The petitioner cannot be expected to do more than deny that it made expenditures that would tend to evidence that it had unreasonably accumulated its earnings and profits. Accordingly, we hold that as to loans to or expenditures for the benefit of shareholders or investment by the petitioner in unrelated businesses, the burden of proof will be on the Commissioner.

Finally, the petitioner argues that in light of the discovery that is available to the Commissioner under the Rules of this Court, a section 534(c) statement is sufficient to shift the burden of proof to the Commissioner as to the grounds

asserted therein if it outlines the basic facts supporting such grounds.[5] Apparently, the petitioner is arguing that in judging the sufficiency of the supporting facts in a statement under section 534(c), we should take into consideration the fact that the Commissioner can secure additional facts by means of discovery in accordance with the Rules of this Court and that because of such discovery, the supporting facts need not be set forth fully. The procedure for the submission of the statement under section 534(c) was enacted as a part of the Internal Revenue Code of 1954, and at that time, there were no procedures for discovery under the Rules of the Tax Court. The procedures for discovery did not become effective until January 1, 1974 (60 T.C. 1069 (1973)), and before the adoption of such Rules, our cases consistently required that a section 534(c) statement must contain supporting facts which are substantial, material, definite, and clear. *J. Gordon Turnbull, Inc. v. Commissioner*, 41 T.C. 358, 370 (1963), affd. 373 F.2d 87 (5th Cir. 1967); *I. A. Dress Co. v. Commissioner*, 32 T.C. at 100–101.[6] Congress has taken no action to modify the statutory requirement in section 534(c) as a result of the adoption of the discovery procedures.

It may be suggested that since the Commissioner can obtain facts through discovery, there is no longer the same need to include facts in the section 534(c) statement as there was when discovery was not available, but such suggestion overlooks the purpose and operation of the procedures established by section 534. The purpose of those procedures is to encourage the taxpayer to "show its hand" while the case is still under administrative consideration; if it does, it is rewarded by having the burden of proof shifted to the Commissioner in the event that litigation becomes necessary. Sec. 534(a)(2); *Capital Sales, Inc. v. Commissioner*, 71 T.C. at 435. The effect of such procedures is to facilitate the settlement of accumulated

---

[5]The petitioner relies on *Petrozello Co. v. Commissioner*, T.C. Memo. 1983–250, on appeal (3d Cir., Aug. 5, 1983), and *Soros Associates International, Inc. v. Commissioner*, T.C. Memo. 1982–79. However, in each case, the sufficiency of a sec. 534(c) statement must be decided by an examination of the grounds and supporting facts contained therein.

[6]See also *Powder Mill Realty Trust v. Commissioner*, T.C. Memo. 1973–149; *Bohac Agency, Inc. v. Commissioner*, T.C. Memo. 1971–228; *Federal Ornamental Iron & Bronze Co. v. Commissioner*, T.C. Memo. 1969–72.

earnings tax cases at the administrative level. *Manson Western Corp. v. Commissioner*, 76 T.C. 1161, 1163–1165 (1981); see Rev. Proc. 56–11, 1956–1 C.B. 1028. If the taxpayer shows its hand at the administrative level, the Commissioner will be in a position to evaluate his case, and many cases may be settled at the administrative level. However, were we to hold that the section 534(c) statement need not include supporting facts because the Commissioner could ultimately obtain such facts through discovery after a case is commenced in this Court, the incentive for the taxpayer to show its hand during the administrative process would be removed, and fewer cases would be settled at that level. Under such circumstances, we conclude that the availability of discovery should not and does not affect the scope of the facts to be included in the statement under section 534(c).

In the second motion, the petitioners seek to compel the production of two documents. The documents were submitted to the Court for its in camera inspection. Each document is a memorandum to the file written by a revenue agent who examined the petitioners' tax returns. The Commissioner, who is the objecting party, bears the burden of establishing that his objections to the petitioners' request for production should be sustained by this Court. *Branerton Corp. v. Commissioner*, 64 T.C. 191, 193 (1975).

In the first document, the agent set down his recollections of the discussions that took place when the president of the corporate petitioner executed a Form 872 extending the period of limitations. The Commissioner objects to the production of this document on the ground that it may be used by him for impeachment purposes. During oral argument on this motion, we were informed by the Commissioner's attorney that certain of the petitioner's officers have filed with the Commissioner affidavits which contain their recollections of the discussions at the time of the execution of the form. In light of the fact that the petitioner's officers have provided such affidavits to the Commissioner, we believe that possible impeachment use is no longer an adequate ground to resist production of this document. See *Zaentz v. Commissioner*, 73 T.C. 469, 479 (1979); *Industrial Electric Sales & Service, Inc. v. Commissioner*, 65 T.C. 844, 845–847 (1976); *P. T. & L. Construction Co. v. Commissioner*, 63 T.C. 404, 412–413 (1974).

The Commissioner maintains that the second document is exempted from disclosure by executive privilege, which shields from disclosure the mental impressions, opinions, reasoning, and conclusions of Government officials. He also asserts that the document was prepared in anticipation of litigation.

Executive privilege does protect some documents from disclosure, but the privilege is qualified, not absolute. Executive privilege covers:

statements of advice, deliberation, and recommendation. * * * The privilege is based on the public policy of encouraging wise and efficient government by fostering an environment wherein officials may comment on issues of governmental policy- and decision-making in a candid manner, without fear that their comments will be subjected to scrutiny by the public at large.

But this privilege is qualified in that it recognizes there are instances in which justice will require disclosure of such material. A balancing of interests is required; the gravity of the individual's need for disclosure must be weighed against the harm that disclosure may do to intragovernmental candor. [*P. T. & L. Construction Co. v. Commissioner*, 63 T.C. at 409.]

After having examined the revenue agent's memorandum, we have concluded that it contains only his legal theories about certain aspects of the examination of the petitioner's returns and as such constitutes the thought processes and conclusions of the revenue agent. Accordingly, we hold that it is protected from discovery by executive privilege. *Zaentz v. Commissioner, supra* at 479; *Barger v. Commissioner*, 65 T.C. 925, 930–931 (1976). In view of that conclusion, we need not determine whether the second document was prepared in anticipation of litigation. See *Dvorak v. Commissioner*, 64 T.C. 846, 848–851 (1975); *Branerton Corp. v. Commissioner*, 64 T.C. at 194; *P. T. & L. Construction Co. v. Commissioner*, 63 T.C. at 407–408.

*An appropriate order will be issued.*