P. T. & L. CONSTRUCTION CO., INC., ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2017-71—2019-71.     Filed December 26, 1974.

*Martin D. Cohen,* for the petitioners.
*Thomas S. Carles,* for the respondent.

[1] The following cases are consolidated herewith: Paramus Heavy Equipment Corp., docket No. 2018-71; and Nicholas A. Laganella and Anita Laganella, docket No. 2019-71.

OPINION

DAWSON, *Judge:* These consolidated cases have been assigned to Commissioner Joseph N. Ingolia for trial.

Petitioners have requested respondent to produce certain documents as provided in Rule 72, Tax Court Rules of Practice and Procedure, and respondent has objected to the request. This interlocutory dispute between the parties is now before the Court for resolution.

The documents for which production is sought are: (1) A transcript of questions propounded to and answers given by a third-party witness; (2) the special agent's report pertaining to these petitioners and covering the years in issue; and (3) the appellate conferee's report on these matters. Respondent objects to their production on the ground that they were prepared in anticipation of litigation and are thus excluded from discovery under the "work product" doctrine. In the alternative, respondent objects to disclosure of portions of the special agent's report and appellate conferee's report on grounds of executive privilege. He also objects to disclosure of these and other portions of the reports on the basis of relevance. Finally, he objects to production of the question and answer statement on the ground that petitioners seek the document to compromise its use for purposes of impeachment or cross-examination. In the event we hold the statement discoverable, respondent argues that discovery should be delayed until petitioners' witnesses have testified at trial.

Before reaching the merits of the various objections, it is necessary to set out the manner in which this dispute has been brought before the Court.

Petitioners' Federal income tax returns for the years in issue were audited by respondent, and in the course of this audit the revenue agent developed the suspicion that petitioners' returns were fraudulent. These suspicions were relayed to the Intelligence Division of the Internal Revenue Service, which handles investigations of tax fraud. After a preliminary evaluation, the Intelligence Division began a full investigation of petitioners' potential criminal liability for income tax evasion. After the investigation was completed and the results had been thoroughly evaluated, no criminal prosecution of any of petitioners was instituted.

Subsequently, statutory notices of deficiencies were mailed to the respective petitioners. As to the corporate petitioners, respondent determined that numerous deductions claimed on their returns were not allowable and that at least part of the resulting underpayments were due to fraud, for which the fraud penalty was asserted. As to the individual petitioners, respondent's primary determination was that they had fraudulently omitted certain items of income from their returns, resulting again in the assertion of the fraud penalty. Timely petitions were filed, and, through the pleadings, issue was joined as to each of the adjustments made in the notices of deficiencies.

Petitioners commenced discovery shortly after the Court's new Rules, which adopted certain discovery procedures for the first time, became effective on January 1, 1974. Rule 2(a), Tax Court Rules of Practice and Procedure. Thus, on January 31, 1974, petitioners served on respondent a request for the production of certain documents pursuant to Rule 72. The documents requested were:

(1) Transcripts of question and answer sessions conducted during a 1966-68 investigation by respondent's agents.

(2) Signed statements obtained by respondent's agents during the same investigation from (a) present or former employees of petitioners, and (b) persons who sold services or materials to petitioners.

(3) Written reports prepared by or under the supervision of respondent's agents, including special agents and appellate conferees.

Upon the failure of respondent to produce these documents the petitioners filed a motion to compel their production. Respondent filed memoranda in opposition to petitioners' motion. Petitioners' request for production was modified as a result of conferences held with respondent, where petitioners were furnished information as to the whereabouts of almost all of the possible third-party witnesses involved. Petitioners responded to respondent's memoranda noting that their request was now limited to:

(1) A special agent's report of uncertain date but believed to have been completed in 1967 or early 1968 by Special Agent Toscano.

(2) A statement prepared by Appellate Conferee Ben Gerber in the summer or early fall of 1970 for the express purpose of explaining the grounds for issuance of the deficiency notice.

(3) The transcript of an interrogation of Judy (Cheri) Jackson of uncertain date but believed to have taken place in 1966 or 1967.

The trial of these cases was originally scheduled for May 13, 1974. On May 6, 1974, Commissioner Ingolia issued a memorandum sur order which dealt with the discovery question. He concluded that the materials herein involved were not entirely exempt under the doctrine of executive privilege and that they were not prepared in anticipation of litigation. However, he did not order immediate production but permitted respondent to make specific objections on the grounds of relevancy and that the production of the documents would frustrate cross-examination and impeachment. Respondent then filed specific objections and submitted the contested materials to Commissioner Ingolia for in camera inspection. Respondent also filed a memorandum of law in which he renewed his earlier objections. The nature of respondent's response resulted in the trial being continued.

Commissioner Ingolia prepared a report of this interlocutory discovery proceeding in which he proposed to sustain the rulings he had previously made in his memorandum sur order. He forwarded this report to the Chief Judge for consideration of whether it should be adopted as the opinion of the Court. See *William F. Henry,* 62 T.C. 605 (1974). Our views and conclusions on the issues presented are set forth below. In some respects they do not coincide with those of Commissioner Ingolia.

1. *The "Work Product" Doctrine.*—Respondent's first objection to the production of the documents in question is that they are prepared in anticipation of litigation and are thus excluded from discovery under the so-called "work product" doctrine. The work product doctrine was given its first thorough exposition in the Federal courts in *Hickman v. Taylor,* 329 U.S. 495 (1947). In that case the Supreme Court held that materials prepared in anticipation of litigation, including witness' statements, were not subject to discovery as a matter of right because such discovery would be harmful to the orderly prosecution and defense of legal claims in adversary proceedings. "Work product," as a term of art, is used to describe such protected materials. See *Hickman v. Taylor, supra* at 510.

The holding in *Hickman v. Taylor, supra,* has been specifically incorporated in the Federal Rules of Civil Procedure as rule 26(b)(3). Further, the work product doctrine is given negative recognition in the Tax Court Rules of Practice and Procedure in that, even though it is not mentioned in the body of the Rules, it is dealt with in the notes of our Rules Committee to Rule 70(b). These notes state, in pertinent part, as follows:

The other areas, i.e., the "work product" of counsel and material prepared in anticipation of litigation or for trial, are generally intended to be outside the scope of allowable discovery under these Rules, and therefore the specific provisions for disclosure of such materials in FRCP 26(b)(3) have not been adopted. Cf. *Hickman v. Taylor,* 329 U.S. 495 (1947). [60 T.C. 1098.]

The work product doctrine applies only to materials that are prepared in anticipation of litigation. If materials are not so prepared, they are discoverable as a matter of right, assuming relevance and lack of privilege. Thus we are faced with deciding whether the materials here in question were prepared in anticipation of litigation. If they were not, then the work product doctrine has no application in this case.

Respondent argues that they were so prepared, but he has offered us little to support his claim beyond conclusionary statements to that effect. Petitioners, on the other hand, have cited two cases on the question. These cases are *Peterson v. United States,* 52 F.R.D. 317 (S.D. Ill. 1971), and *Abel Investment Co. v. United States,* 53 F.R.D. 485 (D. Neb. 1971). Both cases are direct authority on whether the appellate conferee's report is prepared in anticipation of litigation, and both hold the conferee's report is not so prepared. Although neither case specifically deals with materials prepared by a special agent, we find their reasoning to be applicable to such materials. Particularly relevant are the factors listed in the *Abel* case at 53 F.R.D. 489.

We choose to follow the reasoning and conclusion of those two cases on this particular issue. Accordingly, we hold that none of the material was prepared in anticipation of litigation.[2]

2. *Executive Privilege.*—Having rejected respondent's first contention, we turn next to his claim of executive privilege. We begin our consideration of this issue by noting that respondent does not claim that an absolute privilege exists which would exempt all these materials from discovery. Indeed, any such claim

---

[2] In so holding, we will not follow the contrary holding in *Weir Foundation v. United States,* 29 AFTR 2d 72-1225 (S.D. N.Y. 1972).

would be contrary to the recent Supreme Court decision in *United States v. Nixon,* 418 U.S. 683, 705-707 (1974). As such, we see no need to discuss the matter of absolute privilege further.

The privilege which respondent does raise is a qualified privilege developed in the case law which in some circumstances protects certain statements of governmental officials from disclosure. *Committee for Nuclear Responsibility, Inc. v. Seaborg,* 463 F. 2d 788 (C.A.D.C. 1971); *Boeing Airplane Co. v. Coggeshall,* 280 F. 2d 654, 660-662 (C.A.D.C. 1960); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D. D.C. 1966), affd. 384 F. 2d 979 (C.A.D.C. 1967). The statements covered by this privilege are statements of advice, deliberation, and recommendation. *Committee for Nuclear Responsibility, Inc. v. Seaborg, supra* at 794. The privilege is based on the public policy of encouraging wise and efficient government by fostering an environment wherein officials may comment on issues of governmental policy- and decision-making in a candid manner, without fear that their comments will be subjected to scrutiny by the public at large.

But this privilege is qualified in that it recognizes there are instances in which justice will require disclosure of such material. A balancing of interests is required; the gravity of the individual's need for disclosure must be weighed against the harm that disclosure may do to intragovernmental candor.

Before engaging in this weighing process, we must determine the scope of the privilege. Respondent asserts that the privilege extends to "conclusions, mental impressions, opinions, thought processes, or recommendations." From this statement, it is apparent that respondent thinks the privilege extends to all of those matters that are given an extra degree of protection under rule 26(b)(3) of the Federal Rules of Civil Procedure, relating to "work product." We disagree.

Although both the work product doctrine and executive privilege are meant to provide a degree of privacy, the need for such privacy springs from different considerations. The work product doctrine is necessary to make an adversary system of litigation work. *Hickman v. Taylor, supra.* Executive privilege, on the other hand, does not presuppose an adversary judicial proceeding. It is merely meant to save possible embarrassment of governmental officials that would result from dissemination of certain of their statements to the public, via the media or other-

wise. The prospect of such embarrassment would inhibit free expression in rendering advice and recommendations necessary to effective policy- and decision-making. An adversary in a legal proceeding must fear the disclosure of every opinion or mental impression he forms, whether it is central to his case or not, because disclosure even of relatively minor matters may lead to the creation of "red herrings" or otherwise thwart the effectiveness of an adversary proceeding. In contradistinction, governmental officials need only fear disclosure of the more personalized, judgmental type of statement that might cause adverse public opinion. For this reason, we hold that executive privilege, unlike the work product doctrine, does not protect *all* opinions, conclusions, mental impressions, and thought processes of governmental officials.

Respondent cites the case of *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F. Supp. 939 (Ct. Cl. 1958), to support the proposition that executive privilege is coextensive in its coverage with the work product doctrine. However, in that case the court dealt with a document that contained no "data" but was "confined to recommendations and advice on program policy." 157 F. Supp. at 944. The issue of whether mental impressions of "data," which are clearly protected by the work product doctrine, are also protected by executive privilege was not before the court in *Kaiser.* Consequently, we do not interpret the court's reference to a kinship between the work product doctrine and executive privilege (157 F. Supp. at 947) as constituting a holding that they are coextensive.

An example of the distinction we are attempting to draw is found in the present case. In his list of specific objections based on an executive privilege, respondent objects to disclosure of several statements made in the factual recitation included in the special agent's report. These statements consist of inferences of fact derived from certain evidentiary facts set out previously in the report. These factual inferences are conclusions of the special agent and would undoubtedly be given added protection under the work product doctrine if it applied. However, these inferences of fact are not deserving of protection under executive privilege because they are not, in our judgment, the type of statement that a Government official would hesitate to make for fear of disclosure to the public.

3. *Special Agent's Report.*—Our in camera examination of the special agent's report convinces us that the only material therein which is subject to protection under executive privilege is that appearing as the last paragraph on page 9 and the first paragraph on page 10, and all of pages 35 through 37. This material contains a statement of the recommendation of the revenue agent, and the recommendations of the special agent and his deliberations that led him to his recommendations. No new fact is recited in these portions of the report.

Thus we must balance the interests of taxpayer discovery against governmental privacy as to this particular material.[3] As to these portions, petitioners' only stated need is that discovery thereof might narrow the issues and facilitate settlement. We find this to be more simply a desire rather than a real need under the present circumstances. Having examined the special agent's report here involved, and balancing the interests of the parties, we hold that the above-specified portions of the special agent's report are protected in this case from discovery by executive privilege.

4. *Appellate Conferee's Report.*—We now turn to the appellate conferee's report, bearing in mind that our previous general observations on the privilege are equally applicable here. An appellate conference is usually attended by the conferee and representatives of the taxpayer. The conferee ordinarily has before him a file containing the income tax returns, the revenue agent's report on which the 30-day letter has been based, the special agent's report in some cases (as in the present case), the taxpayer's protest, and any new information supplied by the taxpayer at the conference. Rarely does the conferee make any independent inquiries as to facts not disclosed elsewhere in the file.

The conferee's report contains his summary of the facts already in the file, his analysis of the law as applied to those facts, and his recommendation on any settlement proposal discussed at the conference. The report does not contain any new *factual* information. The factual portion includes a summary of the protest (already known to the taxpayer), the factual inferences drawn from the protest (matters of argument), and statements of what

---

[3] No balancing is necessary as to the remainder of the special agent's report, i.e., the factual information contained therein including the schedules and exhibits attached thereto, because such factual data is not protected by executive privilege.

is *not* in the protest (presumably a predicate for the legal analysis and conclusions which follow). In our judgment the objectives of discovery do not require the production of this material. Its only value to petitioners lies in its statement of the legal theory adopted by the conferee.

Although we realize that the *Peterson* and *Abel Investment* cases require the production of conferee reports, other cases, such as *Simons-Eastern Co. v. United States,* 354 F.Supp. 1003 (N.D. Ga. 1972), and *Weir Foundation v. United States,* 72-1 USTC par. 9435 (S.D. N.Y.), hold otherwise. In the particular circumstances of this case we hold that the appellate conferee's report is irrelevant to a development of the *facts* of the case, see, e.g., *Bernstein v. Commissioner,* 267 F. 2d 871, 881 (C.A. 5, 1959), and that it is subject to the qualified privilege which protects the decisional process, i.e., the opinions and recommendations of administrative officials.

5. *Third-Party Statement.*—Respondent objects to production of the question and answer statement of witness Judy (Cheri) Jackson on the ground that disclosure of its contents would compromise its use for cross-examination or impeachment purposes. As to this ground for resisting discovery the notes to Rule 70(b) state as follows:

> With respect to discovery of an opponent's materials which may be used for impeachment purposes, the same Advisory Committee observed (House Doc. No. 91-291, *supra,* pp. 25-26) that "the courts have in appropriate circumstances protected materials that are primarily of an impeaching character." The Committee concluded that this type of materials is one illustration of "the many situations, not capable of governance by precise rule, in which the courts must exercise judgment. * * *" [60 T.C. at 1098.]

Respondent does not suggest that the witness' statement will be used either by himself or petitioners to impeach any testimony given by witness Jackson, by showing a prior inconsistent statement. What he does suggest is that, if the statement is produced prior to trial, petitioners may decide to "tailor" testimony they may offer so that it will not conflict with the testimony of witness Jackson. Apparently respondent projects that such a conflict might develop, and, if it does, he will be able to discredit the testimony of interested witnesses who testify contrary to Jackson. Respondent has offered us nothing to support this projection beyond perhaps the general observation that witnesses, particularly interested witnesses, will sometimes shade

their testimony to avoid raising doubts as to their credibility. This is true but it is hardly a reason to deny discovery. The main reason for discovery in the first place is to bring the evidence out into the light of day before the trial starts. This is considered to outweigh the consideration that surprise evidence that has been kept in the dark may be brought out at trial to produce a conflict and thereby cast doubt on the credibility of a witness.

In view of our examination of the question and answer statement of Judy Jackson and the information contained therein, we reject respondent's arguments and conclude that the production of the statement will be ordered.[4]

6. *Relevance.*—The subject of relevance is dealt with in Rule 70(b) of our Rules which states, in pertinent part, as follows:

(b) Scope of Discovery: The information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case. It is not ground for objection that the information or response sought will be inadmissible at the trial, if that information or response appears reasonably calculated to lead to discovery of admissible evidence, regardless of the burden of proof involved. If the information or response sought is otherwise proper, it is not objectionable merely because the information or response involves an opinion or contention that relates to fact or to the application of law to fact. * * *

Respondent has not objected to production of the witness' statement on the ground of relevance, and he has objected to specific parts of the special agent's and appellate conferee's reports on this ground.

We see no need to discuss in this opinion each and every portion of the reports respondent has challenged as irrelevant. Indeed, it would be impossible in some instances to do so without disclosing herein the contents of the challenged portions. We leave the task of ruling on respondent's specific objections to the trial commissioner, who may do so with due consideration to our comments herein.

However, we have the following general observations. Some of the material respondent has objected to, such as the table of contents to the special agent's report, while not directly relevant to any fact that may be established at trial, would aid the reader in understanding the material that we hold is subject to discovery. As such, it is relevant, albeit in a derivative sense. Respondent has also objected, on grounds of irrelevancy, to

---

[4] In addition, we think the Jencks Act is not applicable in this situation.

certain information in the reports whose relevance is crystal clear. For example, at page 10 of the special agent's report there is a list of returns involved in this case, identified by taxpayer, year, serial number, and date filed. Nothing could.be more relevant to a fraud case than the allegedly fraudulent returns. We suspect that respondent has objected to this portion of the report because he believes petitioners already have this information. If, in fact, this is respondent's reason for making the objection, we wish to point out that whether petitioners already have certain information has nothing to do with whether the information is relevant.

Finally, we emphasize most strongly that the basic purpose of discovery is to reduce surprise by providing a means for the parties to obtain knowledge of all the *relevant facts.* What is relevant is the *factual information* which may either reveal evidence that will be admissible at the trial or lead to the discovery of such evidence. Mental impressions, legal analysis, conclusions, and recommendations are generally not relevant.

*An appropriate order will be entered.*