**McPIKE, INC., and its wholly owned subsidiary, Campbell Development, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 482–85T.

United States Claims Court.

June 17, 1988.

Oscar S. Brewer, Kansas City, Mo., for plaintiffs; Hillix, Brewer, Hoffhaus & Whittaker, Kansas City, Mo., of counsel.

David Gustafson, Dept. of Justice, William S. Rose, Jr., Washington, D.C., for defendant.

## ORDER

ROBINSON, Judge.

The defendant, the United States, has moved the court to order *in limine* that at the trial in this case, now set to commence in Kansas City, Missouri, on June 27, 1988, plaintiffs not be permitted to introduce evidence concerning the federal income tax treatment of its expenditures in years other than the ones involved in this lawsuit. The plaintiffs filed their memorandum in opposition to the defendant's motion and subsequently, the defendant responded to the plaintiffs' memorandum in opposition. By order dated June 13, 1988, the court informed the parties that it would grant the defendant's motion. This order assigns the court's reasons therefor.

### *Factual Background*

This is a tax refund suit brought by McPike, Inc., a Missouri corporation (McPike), McPike Pharmacy Systems, Inc., a Missouri corporation (Pharmacy), and Campbell Development, Inc., a Colorado corporation (Campbell), (hereinafter collectively plaintiffs). McPike was the parent company, and Pharmacy and Campbell were wholly-owned subsidiaries. However, after the filing of this suit, McPike's name was changed to Campbell Investors, Inc.

In 1968, Campbell acquired two tracts of land containing approximately 80 acres near Red Feather Lakes, Colorado, and in 1971, another adjacent tract, bringing the total land area to approximately 459 acres. A nine-hole golf course, on one of the tracts at the time of its acquisition, was about 65 percent completed. It was redesigned to include 18 holes and to add building sites.

Plaintiffs, utilizing various non-management employees, began expansion of the golf course property called Fox Acres. The work, consisting of construction and maintenance functions, extended through the four years in suit, 1978–81. Although

the cost of the land and material costs of building construction were capitalized, the wages and salaries paid its employees and all other expenses other than direct capital expenses during the earlier years were deducted by plaintiffs in determining their income for federal income tax purposes.

As a result of audits of plaintiffs' returns for the years 1974–77, plaintiffs adjusted their capitalization cost allocations with respect to employee payroll, depreciation, and vehicle expenses. Payroll costs were allocated by an examination of employee time records. Time spent on construction activities was to be capitalized and time spent on maintenance activities was to be deducted. Ultimately, the audits for all four of these years were closed with adjustments in plaintiffs' income tax liability to take into account capitalization of costs in accordance with plaintiffs' allocation procedures.

With respect to the payroll costs during two of the years in suit, 1978 and 1980, the plaintiffs applied the same allocation methodology used for the capitalization allocation of payroll expenses adopted as a part of the audit closures effected for 1974–77. The plaintiffs intend offering evidence at trial to show that the Internal Revenue Service (commissioner or IRS) in connection with the closure of these audits and settlement of plaintiffs' tax liabilities for 1974–77, accepted and thereby, approved, tacitly at least, plaintiffs' method for allocating the cost of employee payroll used in 1978 and 1980.[1]

The defendant has filed a motion *in limine* seeking to have this court declare that such evidence is not admissible for the purposes for which it is being offered by the plaintiffs.

### *The Motion In Limine*

Defendant's motion asserts that Rule 408

---

1. The plaintiffs' accountants analyzed the individual time sheets of employees in an attempt to determine the type of activity in which various employees were engaged so that the cost could either be capitalized or deducted depending upon the nature of the activity. During the other two years in suit, 1979 and 1981, different methods which are not a subject of defendant's motion *in limine* were used to make the allocation.

of the Federal Rules of Evidence[2] makes the fact of acceptance by the IRS of plaintiffs' methodology for allocation of payroll costs for the prior years, 1974–77, under a settlement agreement between the parties, irrelevant and inadmissible in this proceeding. The defendant argues in support of its motion that the Rule encourages attempts at settlement and that it obviates the need for trial of issues involved in the settlement years. Further, defendant maintains, allowing testimony as to the acceptance of the methodology by other IRS personnel would constitute allowing inadmissible testimony as to the legal opinions of such IRS personnel.[3] In addition, the defendant contends that when the IRS does not disallow a given type of deduction in one year, it has not bound itself to allow such deductions in perpetuity.

In their response, plaintiffs allege that their contention is not that they entered into an agreement with the IRS respecting the earlier audits which precludes the defendant from questioning alterations in subsequent years. Rather, plaintiffs contend only that the IRS, by acceptance of the plaintiffs' allocation methodology, "tacitly admitted" that that methodology was reasonable and such admission is entitled to consideration by this court in determining the reasonableness of the methodology of allocating payroll for the described two

years covered by this suit, namely 1978 and 1980. The plaintiffs contend that, for example, a method for partial allocation of management costs *approved* by the IRS would be relevant in subsequent proceedings but cites no case directly in point on this question. The case of *Fort Howard Paper Co. v. Commissioner*, 49 T.C. 275 (1967), cited by plaintiff as the closest in point concerned whether or not the petitioner's method of accounting with respect to overhead expenses clearly reflected income as required by 26 U.S.C. Section 446. That case does not concern application of Rule 408.

Plaintiffs also contend Rule 408 is inapplicable because no concessions were given by defendant in connection with the prior years and no evidence is offered to establish anything with respect to the claim in which the methodology was developed. Thus, plaintiffs contend that the allocation method was not a part of the "settlement negotiations" covering the prior years. Plaintiffs further contend the issue is a factual one, citing *Davee v. United States*, 195 Ct.Cl. 184, 444 F.2d 557 (1971), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1507, 47 L.Ed.2d 762 (1975), and not a legal issue.[4] Hence, they conclude, testimony is admissible respecting the IRS's acceptance of the plaintiffs' methodology in these earlier audit closure proceedings.

---

2. Rule 408 provides:
 Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. * * *

3. The defendant cites in support of this proposition: *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 365–68 (4th Cir.1986); *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir.1986); *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir.1986); *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983); *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 97 (2d Cir.), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270 (9th Cir.1980); *United States v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979); *Marx & Co. v. Diners Club, Inc.*, 550 F.2d

505, 509–10 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir.1969); *Strickland v. Humble Oil Refining Co.*, 140 F.2d 83 (5th Cir.), *cert. denied*, 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573 (1944); *see also Lamar v. Micou*, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94 (1885); *see generally* VII *Wigmore on Evidence*, Section 1952, at 103 (1978).

4. In *Davee*, the court said:
 Occasionally, an expenditure may represent in part a business expense and in part a nonbusiness expense, which latter might or might not be a capital expenditure. In such cases it is necessary to make an allocation so as to determine the amount deductible under this provision (I.R.C. Section 162) of the statute. The burden of proving the proper allocation is on the taxpayer. *The issue in each case is necessarily a factual one.* [Emphasis added.] *Davee*, 195 Ct.Cl. at 202, 444 F.2d at 567.

In its reply, defendant argues that plaintiffs' attempt to import into this dispute the "accounting method" concept from Section 446 to give added weight to the IRS's alleged concurrence with that procedure must necessarily fail. In this regard, defendant contends that the plaintiff is untimely in raising the Section 446 issue of whether its method of accounting clearly reflected its income. While the defendant admits that it is indeed possible for a taxpayer to contest an adjustment to its tax liability on the grounds that the adjustment constitutes a "change in accounting method" which is an abuse of the commissioner's discretion, defendant states that plaintiff has failed to advance this argument in any prior pleading, including its claims for refund which are the genesis of this court's jurisdiction over this matter. Thus, defendant contends that this court lacks jurisdiction to even consider plaintiffs' Section 446 argument. Further, defendant states that it would be unfair to defendant, and "subversive" of the court's rules requiring timely articulation of a party's contentions, to allow the interjection of the Section 446 issue into the case now.

Next, defendant argues that even if plaintiff had timely raised the Section 446 issue, plaintiff could not prevail because the disallowances at issue do not constitute a "change of accounting method." Defendant characterizes plaintiffs' argument as a non-dispute. Defendant admits that it has no quarrel with plaintiff's "accounting method" as it is described. Rather, defendant excepts to plaintiffs' misclassification of certain categories of time, misinterpretation of the time sheets during the allocation process, and characterization of the remaining "maintenance" payroll as deductible. Defendant also contends that the definition of an "accounting method" does not encompass plaintiffs' payroll allocation procedures at issue in this case. Defendant states that the plaintiffs' process of determining the nature of its payroll is in no way a "method of accounting" but that plaintiffs' treatment of the expenditures once identified by the process may be such a method. Also, defendant argues that the plaintiffs' conduct is inconsistent with their asserting that their procedure is a "method of accounting" since plaintiffs did not seek consent of the Secretary of the Treasury, as required by Section 446(e), at any time for any of the three changes they unilaterally effected in their method. *See also* Treas.Reg. Section 1.446–1(e)(2).

Last, the defendant contends that even if the disallowance of plaintiffs' deductions resulted in a "change of accounting method," such a change is permissible, indeed required, if plaintiffs' method is incorrect. Section 446(b) provides that if a taxpayer's method does "not clearly reflect income," as the defendant contends plaintiffs' procedures did not, "the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." In addition, defendant argues that the propriety of an accounting method change required by the commissioner is unaffected by the fact that the taxpayer used the improper method for a long period or that the IRS previously allowed the use of the incorrect method.

In its conclusion, defendant continues to urge that any information about years other than those at issue is simply irrelevant to any real issue presented by this case. Defendant reiterates that the fundamental factual dispute is the portions of employee time spent in the tax years 1978–81 on various tasks. Thus, defendant contends, evidence about such facts in prior years sheds no light whatsoever on factual questions regarding the years in suit.

### Discussion

 The acceptance for the taxable years 1974–77 by the IRS of the plaintiffs' method of allocation of payroll costs was an integral and necessary part of a negotiated settlement which increased plaintiffs' disputed tax liability since plaintiff agreed to capitalization of a portion of its payroll costs, all of which had been deducted prior to the audits. The plaintiffs unquestionably received a valuable consideration for which they bargained. That consideration was the ending of their exposure to greater tax liability during the years in question. The defendant's consideration was in giv-

ing up a right to seek additional taxes from the plaintiffs. The court, therefore, finds in these circumstances that the plaintiff is prohibited by Rule 408 of the Federal Rules of Evidence, from introducing evidence at trial regarding the particular circumstances surrounding the settlement reached for the years 1974–77. This prohibition extends to testimony respecting "the tacit approval" by the IRS of allocation of payroll expenses adopted by virtue of the settlement. To interpret Rule 408 otherwise would discourage meritorious settlement attempts, whether justified because of the small size of the amount involved, limited time and resources, avoidance of delay or similar reasons. To allow the plaintiffs to introduce testimony as to what the commissioner may have agreed to in prior audits could unnecessarily broaden the issues to be considered at trial, could introduce collateral issues not material in this case, and could require that the court allow the defendant an opportunity to introduce rebuttal evidence; i.e., to show that the commissioner agreed to something other than as stated by the plaintiff. Such evidence would tend to confuse and obfuscate the central issues in this case. Moreover, it is irrelevant in this proceeding involving the tax years 1978 and 1980 that the commissioner or other IRS personnel thought that *legally* the plaintiffs were paying the proper tax for the tax years 1974–77 based upon the acceptance of the plaintiffs' adoption of the described allocation method. The proper method for allocation of expenses, simply stated, is a matter for this court to determine. The opinions of others respecting the legal validity of the plaintiffs' method is inadmissable.[5]

■ The plaintiffs in their response have possibly raised an issue based upon Section 446 as to application of their allocation procedure in this proceeding. The gist of the plaintiffs' argument in this regard appears to be that *assuming* that their allocation method is a "method of accounting" as defined in Section 446, then the commis-

sioner's refusal to accept it for the years 1978 and 1980 would constitute a "change in accounting method" under Section 446 and that such a change would constitute an abuse of discretion. If, indeed, the plaintiffs intended to raise this Section 446 issue, the court disagrees with plaintiffs' position for several reasons. First, such an argument is untimely. Plaintiffs did not raise it in their refund request, the complaint, the statement of issues, plaintiffs' memorandum of fact and law, nor did they make this argument during the pretrial conference on May 31, 1988. For this reason alone, the court need not consider it.

■ Second, the above-noted assumption is wrong. Plaintiffs' procedure for 1978 and 1980 was simply to analyze individual time sheets and thereby try to determine the type of activity involved so that the cost could be capitalized if it was revealed to have been a "construction activity," but deducted if the cost was determined to be in the nature of maintenance. This is not an "accounting method" under Treas.Reg. Section 1.446–1(a)(1). An accounting method is not a procedure used to learn the facts about a taxpayer's expense but it is the *treatment* of that expense by the taxpayer. Plaintiffs' time sheet examination procedure for determining how much employee time was spent on a particular activity is not a method of accounting, but its treatment of the data (whether capitalization or deduction) derived from the examination does constitute an accounting method.

In summary, regarding this point, the court finds that due to untimeliness, it will not consider the plaintiffs' argument that the commissioner's rejection of the plaintiffs' allocation methodology in 1978 and 1980 constituted a change in accounting method under Section 446. But, even if the court is wrong in this, the court finds that the rejection was not of an "accounting method" as defined in and contemplated by Section 446 and therefore the change in-

---

5. Apparently, plaintiffs do not contend that information from prior years is relevant to prove that other expenditures allegedly not allocated in the pre-suit years should therefore not be allocated in the suit years. Nor do plaintiffs mention their pre-suit year allocation method for other allocated expenditures.

volved cannot give rise to a claim by the plaintiffs of an abuse of discretion. However, if the methodology change does constitute a "change in an accounting method" under Section 446, the plaintiffs failed to secure the "consent" of the Secretary of the Treasury for this change as required by Treas.Reg. Section 1.446–1(e)(2). During the four suit years, the plaintiffs actually changed their procedure three times. They used it in 1978 and abandoned it in 1979 when they had an executive estimate the payroll allocations. Then they resumed the time sheet procedure in 1980, but in 1981, they adopted a new computerized procedure. For none of these three changes did plaintiffs secure the consent of the Secretary. The court finds that since the procedure is not a method of accounting, they need not have done so.

■■■ It is undisputed that the taxpayer's method of accounting, or its treatment of all expense items including the payroll expense item here involved, must clearly reflect income in order to be considered a proper method. It remains to be seen whether the plaintiffs' method used in 1978 and 1980 for allocation of payroll was such a method. If it was not, it would make no difference that the commissioner had erroneously accepted the plaintiffs' accounting method in the four prior years because a change to a proper method is required. *See* Section 446(b). The propriety of such a change is unaffected by the fact that the plaintiffs may have been permitted to use an improper method for four years. *See Caldwell v. Commissioner,* 202 F.2d 112, 113–114 (2d Cir.1953); *All–Steel Equipment, Inc. v. Commissioner,* 54 T.C. 1749, 1756 (1970). The commissioner cannot be estopped from this stance because he previously failed to object to the plaintiffs' method even if the plaintiffs may have relied to their detriment upon the commissioner's prior position. *Dickman v. Commissioner,* 465 U.S. 330, 343, 104 S.Ct. 1086, 1093–94, 79 L.Ed.2d 343 (1984); *see also F & D Trading Corp. v. United States,* 217 Ct.Cl. 472, 479, 580 F.2d 414, 419 (1978).

## Conclusion

The fundamental factual dispute involved in this case is what portions of employee time were spent *in the suit years* on the various tasks relating to the construction and maintenance of Fox Acres. If the plaintiffs' accountants were allowed to testify regarding the commissioner's prior acceptance of the plaintiffs' allocation of payroll expense, based upon time sheets for the prior four years, in order to justify such treatment for the years 1978 and 1980, such would discourage settlements in contravention of Rule 408 of the Federal Rules of Evidence; would allow untimely testimony upon what essentially is a legal issue, as opposed to a factual issue, for this court in its sole discretion to initially determine; would broaden unnecessarily, and thereby confuse, the issues properly before the court in this case; and would be of little or no relevance to these issues. Therefore, the court finds for all of the reasons set forth above that the defendant's motion *in limine* is fully justified and is hereby granted.

IT IS SO ORDERED.