HOSPITAL CORPORATION OF AMERICA & SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hospital Corp. of Am. v. Commissioner
Docket Nos. 10663-91, 13074-91, 28588-91, 6351-92[1]
United States Tax Court
T.C. Memo 1994-100; 1994 Tax Ct. Memo LEXIS 101; 67 T.C.M. (CCH) 2369; March 14, 1994, Filed *101 An appropriate order will be issued granting petitioners' motion to compel. For petitioners: N. Jerold Cohen, Walter Wingfield, J.D. Fleming, Jr., Stephen Gertzman, Amanda Scott, and William Bradley. For respondent: Robert J. Shilliday, Jr.
WELLS
WELLS
MEMORANDUM OPINION WELLS, Judge: The instant case is before the Court on petitioners' motion to compel respondent to produce certain "Appeals Supporting Statements." Petitioners' motion asserts certain facts which respondent does not dispute. The facts asserted in petitioners' motion are restated in this Memorandum Opinion solely for the purpose of deciding the instant motion. The notices of deficiency in the instant case determine deficiencies in petitioners' Federal income tax for taxable years 1981 and 1982 in docket No. 10663-91, taxable years 1983 and 1984 in docket No. 6351-92, and taxable years 1985 and 1986 in docket No. 13074-91, and raise issues concerning whether petitioners' method of accounting clearly reflects income. For taxable years prior to 1972, petitioners reported their income and related expenses on the cash receipts and disbursements method of accounting. Following an audit by respondent of petitioners' *102 income tax returns for taxable years 1972 and 1973, respondent determined that petitioners' method of accounting did not clearly reflect income and required petitioners to report their income and related expenses on the accrual method of accounting. Respondent also determined that petitioners maintained "merchandise inventory", which must be reported on the accrual method of accounting. Petitioners settled the accounting issues for taxable years 1972 and 1973 (the settlement) with respondent's Appeals Office. The terms of the settlement required that petitioners report certain items of income and related expenses on the accrual method of accounting. As to any item of income and related expenses which the settlement did not require to be reported on the accrual method, petitioners were entitled to continue to report such items on the cash receipts and disbursements method of accounting. The combination of the cash receipts and disbursements method of accounting and the accrual method of accounting arising out of the settlement is referred to by the parties as a "hybrid" method of accounting. The parties also agreed that certain items would be treated as supply inventory under *103 section 162. [2]
Pursuant to the settlement, respondent adjusted petitioners' income tax returns for taxable years 1972 and 1973. Respondent also adjusted petitioners' income tax returns for taxable years 1974 through 1978 to reflect petitioners' use of the hybrid method of accounting for the taxable years 1972 and 1973. Petitioners used the hybrid method of accounting to report their income and related expenses on income tax returns filed after the settlement; i.e., after 1980. Subsequently, in an audit of petitioners' income tax returns for taxable years 1979 and 1980, respondent's revenue agent challenged petitioners' use of the hybrid method of accounting. The revenue agent concluded that, to the extent the hybrid method of accounting incorporated the cash receipts and disbursements method of accounting, *104 the hybrid method of accounting did not clearly reflect income. The revenue agent recommended that petitioners be required to use the accrual method to report all of their income and related expenses. The accounting issue was settled with respondent's Appeals Office. In that settlement, petitioners contend that respondent once again determined that petitioners' use of the hybrid method of accounting clearly reflected income and that the hybrid method was proper. The dispute regarding the accounting method issue for the taxable years 1979 and 1980 was closed by a letter, dated December 16, 1986. One of the issues [3] petitioners raise for trial is whether, when respondent's Appeals Office settled disputes regarding petitioners' method of accounting, respondent consented to petitioners' change to a "hybrid" method of accounting for purposes of section 446(e). Relying on Klein Chocolate Co. v. Commissioner, 36 T.C. 142 (1961), and Geometric Stamping Co. v. Commissioner, 26 T.C. 301 (1956), petitioners will seek to prove at trial that respondent "consented" to the change of petitioners' accounting method to the hybrid *105 method. Petitioners contend that, upon the Commissioner's consent to a change in a taxpayer's method of accounting, the taxpayer is permitted to use that method to report its income and related expenses in subsequent taxable years. In their motion to compel, petitioners seek to discover documents that will shed light on such issues. Rule 70(b), in pertinent part, provides: The information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case. It is not ground for objection that the information or response sought will be inadmissible at the trial, if that information or response appears reasonably calculated to lead to discovery of admissible evidence, regardless of the burden of proof involved. If the information or response sought is otherwise proper, it is not objectionable *106 merely because the information or response involves an opinion or contention that relates to fact or to the application of law to fact. * * * [Emphasis added.]
In Zaentz v. Commissioner, 73 T.C. 469, 471-472 (1979), we delineated the scope of discovery requests under Rule 70(b): For purposes of discovery, the standard of relevancy is liberal. Rule 70(b) permits discovery of information relevant not only to issues in the pending case, but to the entire "subject matter" of the case. We have previously ruled that material which would aid the discovering party in understanding relevant material, or which would lead to admissible evidence, is within the scope of Rule 70(b). [Citation omitted.] The party who opposes production has the burden of establishing that the documents being sought by the other party are not relevant, or that they are not otherwise discoverable. Rutter v. Commissioner, 81 T.C. 937, 948 (1983); Branerton Corp. v. Commissioner, 64 T.C. 191, 193 (1975). Accordingly, respondent bears the burden of showing that petitioners' motion should be denied. Respondent *107 does not seriously dispute that the documents in issue are relevant to petitioners' theory of the case. Rather, respondent's primary position is that the documents are not relevant to the instant case because petitioners' theory of the case is incorrect as a matter of law. Respondent states the Government's position on petitioners' legal theory as follows: Section 8.02 of Rev. Proc. 84-74 [1984-2 C.B. 736] provides, in part, that the provisions of the revenue procedure are not intended to preclude an appropriate representative of the Service (an Appeals' official with delegated settlement authority) from settling a particular taxpayer's case involving an accounting method issue by means of agreeing to terms and conditions in the best interest of the government. The Appeals' settlement authority discussed in this section is thus an exception to the change in method of accounting procedure set forth in the revenue procedure. If an Appeals' Official settles an accounting method issue in a case, it is unnecessary for a taxpayer to file a change in method of accounting application regarding the settlement since no change in method of accounting *108 occurred by reason of the settlement. Such a settlement involving an accounting method issue and the various terms and conditions thereof is not an approved accounting method change but merely a settlement of an accounting-related issue. A taxpayer seeking a change in method of accounting in conformity with a settlement would be required to file an appropriate application on Form 3115 to accomplish this objective for years subsequent to the settlement. This action was not taken by petitioners in this case. [Citation omitted.]
Petitioners cite respondent's Industry Specialization Program Appeals Settlement Guidelines for the health care industry ("the Settlement Guidelines") and argue that respondent specifically recognizes the relevance of the cases relied upon by petitioners. The Settlement Guidelines, in pertinent part, provide: The typical health care case received by Appeals involves a taxpayer using either the cash or a hybrid method of accounting. If the hybrid method, the method generally results from a past agreement with Examination or Appeals to settle whether the accrual method should be used instead of the cash method. Under the hybrid method, the taxpayer *109 typically reports a portion of patient revenue from some or all of the inventory items on the accrual basis. The cost of sales for the items are determined using accrual accounting. All other items of income and expense are usually reported on the cash method. Regulation 1.446-1(c)(2)(ii) provides that the Commissioner may authorize a taxpayer to adopt or change to a method of accounting permitted by this chapter although the method is not specifically described in the regulations if, in the opinion of the Commissioner, income is clearly reflected by such method. If the taxpayer has consistently used the hybrid method since the change, the agreement can present hazards for the Government. Geometric Stamping Co. v. Commissioner, 26 T.C. 301 (1956), * * *; Klein Chocolate Co. v. Commissioner, 36 T.C. 142 (1961); and Pierce Ditching Co., Inc. v. Commissioner, 73 T.C. 301 (1979). However, even though the Commissioner has authorized a change in method if, in practice, the method is shown to distort income then the Commissioner may require a change from the previously approved method. *110 Klein Chocolate Co.; Ralston Development Corp. v. United States, 91-2 U.S.T.C. 50,333 (10th Cir. 1991); and Thomas v. Commissioner, 92 T.C. 206 (1989). [Internal Revenue Service Appeals Industry Specialization Program Settlement Guidelines, dated September 29, 1992, reprinted in BNA, Special Supplement, Rept. No. 155, August 13, 1993.]
Respondent, however, argues that the holdings in the cases upon which petitioners rely do not apply to the facts of the instant case. At this point in the proceedings, it is difficult for us to speculate whether the Geometric Stamping Co. line of cases will resolve the issues to be decided in the instant case. It is not the relevance of such cases, however, that concerns us at this juncture. It is the relevance of the documents being sought by petitioners that is at the heart of petitioners' motion to compel. We believe that such documents are relevant to the subject matter of the instant case, which is all that is required by Rule 70(b). As stated above, respondent does not dispute the relevance of such documents if petitioners' theory of the case were to be accepted. *111 Insofar as the instant motion concerns the issue of discovery, respondent's argument that petitioners' theory of the case is wrong as a matter of law is without merit. The proper interpretation of section 446(e) and section 8.02 of Rev. Proc. 84-74, 1984-2 C.B. 736, and the application of the Geometric Stamping Co. line of cases to the facts of the instant case, are matters that the Court will decide in due course during these proceedings. If respondent is interested in a pretrial ruling from the Court on matters of law, then respondent's proper course of action, under the Rules of this Court, would be to file a motion for summary judgment under Rule 121. It is not proper, however, for respondent to deny petitioners access to relevant documents merely because respondent believes that petitioners' legal theory is incorrect. Respondent also objects to petitioners' motion on the ground that the documents sought by petitioners would be inadmissible at trial under rule 408 of the Federal Rules of Evidence (Fed. R. Evid. 408). [4] Petitioners argue that the Appeals Office supporting documents would be admissible at trial in order to show *112 whether respondent changed petitioners' method of accounting and approved of such change; to show whether respondent intended the method to be used in subsequent taxable years; and to show whether respondent was acting with knowledge of the underlying facts and the relevant legal authorities. In addition, petitioners assert that such documents could be used for impeachment in the event that respondent attempts to characterize the nature and scope of the settlement agreements at trial. In short, petitioners contend that Fed. R. Evid. 408 does not require the exclusion of prior settlement statements or actions when introduced for such purposes. *113 Respondent cites McPike, Inc. v. United States, 15 Cl. Ct. 94 (1988), for the proposition that Fed. R. Evid. 408 bars a taxpayer from introducing evidence of a settlement of the identical issue before the court for prior taxable years. In McPike, the U.S. Claims Court [5] held that the taxpayer was precluded, under Fed. R. Evid. 408, from introducing evidence at trial of the IRS's "tacit acceptance" of its allocation of payroll costs in years prior to the taxable year which was the subject of the litigation. In order to prove that the IRS tacitly approved of the taxpayer's payroll allocations, the taxpayer had sought to introduce testimony showing such approval and argued that the Commissioner was prevented from questioning the allocation in subsequent taxable years. The court rejected the taxpayer's contention for the following reasons: The acceptance for the taxable years 1974-77 by the IRS of the plaintiffs' method of allocation of payroll costs was an integral and necessary part of a negotiated settlement which increased plaintiffs' disputed tax liability since plaintiff agreed to capitalization of a portion of its payroll costs, all of *114 which had been deducted prior to the audits. The plaintiffs unquestionably received a valuable consideration for which they bargained. That consideration was the ending of their exposure to greater tax liability during the years in question. The defendant's consideration was giving up a right to seek additional taxes from the plaintiffs. The court, therefore, finds in these circumstances that plaintiff is prohibited by Rule 408 of the Federal Rules of Evidence, from introducing evidence at trial regarding the particular circumstances surrounding the settlement reached for the years 1974-77. * * * To interpret Rule 408 otherwise would discourage meritorious settlement attempts, whether justified because of the small size of the amount involved, limited time and resources, avoidance of delay or similar reasons. To allow the plaintiffs to introduce testimony as to what the commissioner may have agreed to in prior audits could unnecessarily broaden the issues to be considered at trial, could introduce collateral issues not material in this case, and could require that the court allow the defendant an opportunity to introduce rebuttal evidence; * * * [Id. at 98.] *115 The court also rejected the taxpayer's argument that its method of allocating payroll costs was a "method of accounting" under section 446, that the IRS' refusal to accept it for subsequent taxable years constituted a "change of accounting method" under section 446(e), and that such a change would be an abuse of discretion. The court dismissed the taxpayer's argument on the grounds that the taxpayer's claim of abuse of discretion under section 446 was not raised in a timely manner, and stated that even if the claim had been raised in a timely manner, the taxpayer's allocation of payroll costs was not an accounting method under section 1.446-1(a)(1), Income Tax Regs.McPike, Inc. v. United States, supra at 99-100. The issue before us is whether respondent must produce the Appeals Supporting Statements in the instant case. The issue in McPike was admissibility at trial, not discoverability prior to trial. Consequently, we *116 find the decision in McPike to be inapposite. As stated above, Rule 70(b) permits the discovery of evidence that would be inadmissible at trial if it is reasonably calculated to lead to the discovery of admissible evidence. Even if we were to assume that the documents petitioners seek from respondent would be inadmissible at trial, respondent has not shown that petitioners' request is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, in McPike, the court did not address the issue of whether it would have allowed the taxpayer to introduce evidence concerning the settlement of the same issue for a prior taxable year had it found that the taxpayer's method of allocating its payroll costs was a method of accounting under section 446. Consequently, McPike is materially distinguishable. [6]
*117 As to the issue of whether Fed. R. Evid. 408 would bar the documents from admission into evidence, we think that the documents are admissible, not to prove the validity or "invalidity of a claim"; i.e., that the hybrid method clearly reflects income, but to accomplish what Fed. R. Evid. 408 refers to as "another purpose"; i.e., to show that respondent consented to the use of that method, which is itself of independent legal significance by reason of section 446(b) and 446(e). We do not think that the intendment of Fed. R. Evid. 408 is to bar admission of evidence relating to a settlement under circumstances where, as in the instant case (assuming the settlement embodies respondent's consent to a change in accounting method), the settlement may carry independent legal significance in its own right. As to the applicability of the reasoning in McPike to the admissibility of the Appeals Supporting Statements, as we stated above, McPike is distinguishable because, in McPike, the court held that the taxpayer's method of allocating payroll costs was not a method of accounting under section 446. In the instant case, it is clear that respondent has disallowed petitioners' method *118 of accounting under section 446(b). Accordingly, we do not find the reasoning of McPike helpful in the instant case. Respondent also contends that the documents requested by petitioners are privileged. The party who claims that documents are privileged has the burden of showing that privilege is applicable. Zaentz v. Commissioner, 73 T.C. 469, 475 (1979). A blanket claim of the privilege is not sufficient to carry a party's burden of proof. Id. In Zaentz, we held that an attorney's work product or a discovery request which seeks only "a mere statement of a party's legal authorities" is privileged, and therefore, not discoverable. In the instant case, petitioners do not seek respondent's work product. [7] Moreover, petitioners' request is not aimed at merely discovering respondent's legal authorities. [8] Rather, petitioners' request is aimed at discovering evidence that supports its theory of the case. While Appeals Office memoranda do contain statements applying law to the facts of the case, Rule 70(b) specifically states that such circumstance alone does not constitute grounds for objecting to an otherwise valid discovery request. *119 *120 Respondent also relies on P. T. & L. Constr. Co. v. Commissioner, 63 T.C. 404 (1974), in which the taxpayer sought to compel discovery of the reports prepared by the Commissioner's special agent and appellate conferee. The Commissioner objected to the taxpayer's discovery motion on the ground that the documents were privileged. In P. T. & L. Constr. Co., we held that "executive privilege, unlike the work product doctrine, does not protect all opinions, conclusions, mental impressions, and thought processes of governmental officials." Id. at 410. Only those types of statements that a Government official "would hesitate to make for fear of disclosure to the public" may be protected from disclosure by the doctrine of executive privilege. Id. In holding that the doctrine of executive privilege is not absolute, we stated: [executive] privilege is qualified in that it recognizes there are instances in which justice will require disclosure of such material. A balancing of interests is required; the gravity of the individual's need for disclosure must be weighed against the harm that disclosure may do to intragovernmental *121 candor. [Id. at 409.]
In P. T. & L. Constr. Co., we held that the portion of the special agent's report which consisted of his recommendations and deliberations, and which contained no new facts, was privileged and not within the scope of discovery. We also held that the appellate conferee's report, which contained an analysis of the law as it applied to the facts of the case, was irrelevant to the development of the facts in the case and "subject to the qualified privilege which protects the decisional process, i.e., the opinions and recommendations of administrative officials." [9]Id. at 412. In Branerton Corp. v. Commissioner, 64 T.C. 191 (1975), a case also relied on by respondent, we held that the taxpayer's request to discover documents similar to the documents sought in P. T. & L. Constr. *122 Co., outweighed respondent's need to protect them from disclosure. In Branerton, part of the taxpayer's deficiency was based upon the mathematical method utilized by the Commissioner's agents to calculate an allowable bad debt reserve. The taxpayer's burden of proof on the bad debt reserve issue could only be met if it showed that the exact mathematical method used by the Commissioner's agents was unwarranted and an abuse of discretion. Mindful of the taxpayer's heavy burden of proof, we held that the need for information concerning the procedure utilized by the Commissioner in disallowing the claimed bad debt reserve outweighed the Commissioner's need to protect the revenue agent's transmittal letter and work papers. We, however, sustained the Commissioner's objection to the production of two district conferee reports, the appellate conferee reports, two conference memoranda, and certain other documents, on the grounds that they are protected from discovery by executive privilege. In the instant case, respondent objects to petitioners' motion to compel production of the Appeals Office settlement statements on the ground that they contain the opinions, judgments, and impressions *123 of Government officials and contain no new facts. Petitioners, on the other hand, contend that the Appeals Office supporting statements are highly relevant to the issues to be decided in the instant case, and, that due to the heavy burden of proof they are required to meet in order to prevail, their need for the documents outweighs respondent's need to protect the confidentiality of communications between Government officials. Respondent also argues that permitting discovery of the Appeals Supporting Statements would discourage meritorious settlement attempts in future cases. Although respondent has not requested that the Court undertake an in camera review of the requested documents in the instant case, we think respondent's concern could be satisfied by such a procedure where respondent believes that the requested documents contain thought processes and mental impressions which should be kept confidential. We conclude that petitioners' discovery request is clearly aimed at obtaining proof of whether respondent did, impliedly or in fact, "consent" to petitioners' change to the hybrid method of accounting for purposes of section 446(e). The Appeals Office settlement statements *124 may be direct evidence of such actions. In both P. T. & L. Constr. Co. and Branerton, we held that, in deciding whether to grant a taxpayer's motion to discover documents that fall within the ambit of executive privilege, we must weigh the taxpayer's need for the information against the Government's need to foster honest and candid intragovernmental communications. Petitioners bear a heavy burden in attempting to prove an abuse of discretion under section 446. Petitioners must show that respondent has acted arbitrarily in order to prevail under section 446. Ford Motor Co. v. Commissioner, 102 T.C.     (1994). Given the heavy burden that petitioners must meet in order to prevail, [10] the extraordinary circumstances in the instant case, and the fact that direct evidence of respondent's actions in settling the accounting method issue for prior years may be found in the requested documents, we hold that petitioners' need for the information contained in the Appeals Office settlement statements outweighs respondent's need to protect the confidentiality of any personal or deliberative communications contained in such statements or documents. *125 [11]
*126 To reflect the foregoing, An appropriate order will be issued granting petitioners' motion to compel. Footnotes
1. These consolidated cases will hereinafter be referred to as the instant case.↩
2. Unless otherwise indicated, all section and Code references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Other issues raised in the notice of deficiency concern whether petitioners' method of accounting clearly reflects income under sec. 446(b).↩
4. Fed. R. Evid. 408 provides: Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.↩
5. Currently, the U.S. Court of Federal Claims.↩
6. Unlike the court in McPike↩, we doubt, at this point in the proceedings, that the production of the documents that petitioners have requested will lead to an unnecessary broadening of the issues to be considered at trial. Furthermore, we are not persuaded that discovery of the requested documents by petitioners will result in the introduction of collateral issues that are not material to issues to be decided in the instant case.
7. Under the work product doctrine, any notes, working papers, memoranda or similar materials, prepared by an attorney in anticipation of litigation, are privileged, and therefore, protected from discovery. See Hickman v. Taylor, 329 U.S. 495 (1947); see also Hartz Mountain Indus., Inc. v. Commissioner, 93 T.C. 521, 526-527 (1989). We have held that an appellate conferee's report that summarizes the grounds of the settlement respondent reached with the taxpayer is not a document prepared in anticipation of litigation. P. T. & L. Constr. Co. v. Commissioner, 63 T.C. 404, 408↩ (1974).
8. Each party is already aware of the legal authorities on which the other party will rely. Respondent, in her motion objecting to petitioners' motion to compel, included a copy of a lengthy letter respondent sent to petitioners' counsel which outlines the Government's theory of the case and the legal authorities on which it will rely.↩
9. We also found that the appellate conferee's report contained no new facts of which the taxpayer was not already aware.↩
10. In Capitol Fed. Sav. & Loan Association v. Commissioner, 96 T.C. 204, 214↩ (1991), we noted "that a somewhat broader scope of inquiry is permitted where taxpayers have the heavy burden of demonstrating that the Commissioner has abused his discretion."
11. Other courts have allowed taxpayers to discover Appeals Office memoranda when the taxpayer has demonstrated the need for such materials. See Abel Invest. Co. v. United States, 53 F.R.D. 485 (D. Neb. 1971); Peterson v. United States, 52 F.R.D. 317 (S.D. Ill. 1971); United States v. Gates, 35 F.R.D. 524 (D. Colo. 1964), United States v. San Antonio Portland Cement Co., 33 F.R.D. 513 (W.D. Tex. 1963); Timken Roller Bearing Co. v. United States, 38 F.R.D. 57, 69 (N.D. Ohio 1964) (quoting the words of Chief Justice Marshall in United States v. Aaron Burr, 25 Fed. Cas. pages 1, 37, No. 14692, when he ordered the production of a letter sent to President Thomas Jefferson: "When a paper is in the possession of one party, [and] it is completely in his power, and is required by the other party, very strong reasons must be given to justify its being withheld, if it have any relation to the case. * * * Yet it is a very serious thing, if such letter should contain any information material to the defense, to withhold from the accused the power of making use of it. It is a very serious thing to proceed to trial under such circumstances.)."↩